UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:21-cv-00459-FDW-DCK

| | |
|---|---|
| JODIE C. DIMMICK and SCOTT E. DIMMICK, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>EMERSON L. DIMMICK, )<br>PARTNERS INSURANCE AGENCY, INC., )<br>and KAREN A. DIMMICK, )<br>)<br>Defendants. )<br>) | ORDER |

THIS MATTER is before the Court on Plaintiffs' Motion to Dismiss Counterclaim Count III (Conversion) under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 31). This motion has been fully briefed and is ripe for disposition by the Court. Because Defendants failed to state a claim for conversion, the Court GRANTS Plaintiffs' motion.

I. BACKGROUND

According to the allegations made in the Answer to support the counterclaim, Plaintiff Scott Dimmick and Defendant Emerson Dimmick owned Stanley Insurance Services ("SIS"), a North Carolina limited liability company. (Doc. No. 30, p. 2). On or about January 1, 2018, the parties executed an agreement for Defendant Partners Insurance Agency, Inc., ("Partners Insurance") to buy "certain insurance accounts, customer information, real estate, and office equipment and all rights and renewals related thereto" belonging to SIS. Id. Scott, Jodie, Emerson, and Karen Dimmick all signed the agreement as "Sellers." Id. Under the agreement, Partners Insurance would pay $1,105,372, with $385,372 being paid as a lump sum and $720,000 paid in a

1

series of $10,000 installments over a six-year period. Id. Partners Insurance paid Plaintiffs $385,372 as a lump sum, and it also paid them $210,000 over the course of twenty-one months before ceasing payment. Id. at 8–9. During that time, Emerson Dimmick served as the president of Partners Insurance. Id. at 1. Emerson and Karen Dimmick ("Individual Defendants"), who received nothing from Partners Insurance, assert that the agreement entitles them, as "Sellers," to half the sale's proceeds—and thus half of what Partners Insurance paid Plaintiffs. Id. at 11. According to their allegations, Plaintiffs knew half of what Partners Insurance paid them belonged to Individual Defendants, but Plaintiffs did not give that money to Individual Defendants. Id.

On August 31, 2021, Plaintiffs filed this action against Defendants alleging breach of contract, tortious interference with contractual relations, and unjust enrichment. (Doc. No. 1). In their Answer, Individual Defendants asserted counterclaims against Plaintiffs. (Doc. No. 30, pp. 6–11). In their third counterclaim, Individual Defendants allege Plaintiffs wrongfully converted $297,686—half of what Partners Insurance paid Plaintiffs—to their own use by "[e]xercising an unauthorized right of ownership over Individual Defendants' share of the proceeds; and [e]xcluding Individual Defendants from exercising their rights of ownership over their share of the proceeds without authorization." Id. at 11.

Plaintiffs now move to dismiss the third counterclaim for failure to state a claim. (Doc. No. 31).

II. DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In conducting a Rule 12(b)(6) inquiry, the court must determine if the pleader's allegations constitute "a short and plain statement of the claim

2

showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a motion to dismiss, the factual allegations in the pleading must suffice to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a pleading will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The court must draw all reasonable factual inferences in favor of the party asserting the claim. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pled factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

Here, Defendants' allegations do not establish a claim for conversion that is "plausible on its face." Iqbal, 556 U.S. at 678. Under North Carolina law, conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 723 S.E.2d 744, 747 (N.C. 2012) (quoting Peed v. Burleson's, Inc., 94 S.E.2d 351, 353 (N.C. 1956)). To make out a claim for

conversion, a claimant must plead "two essential elements[:] . . . ownership in the plaintiff and wrongful possession or conversion by the defendant." See id.

Even after drawing all reasonable inferences in favor of Defendants, the Court cannot plausibly infer from the facts pled that Plaintiffs assumed control over the $297,686 allegedly belonging to Individual Defendants without authorization. Determining whether a pleading "states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the claim must fail. Iqbal, 556 U.S. at 679. Defendant Emerson Dimmick admits he served as the president of Partners Insurance at all relevant times. (Doc. No. 1, p. 2; Doc. No. 30, pp. 1, 6). Taking the facts alleged in Defendants' pleading as true, this means his company paid Plaintiffs $105,000—half of the $210,000 installment payments—that allegedly belonged to Individual Defendants in a series of payments over the course of twenty-one months. (Doc. No. 30, p. 9). His company also paid Plaintiffs $192,686 that allegedly belonged to Individual Defendants as a lump sum. Id. It is not plausible that Partners Insurance would have made payments of this magnitude to Plaintiffs over the course of almost two years without its president's consent, and no allegation suggests otherwise. Therefore, the facts asserted by Defendants in their pleading directly contradict their assertion that Plaintiffs "exercis[ed] an *unauthorized* right of ownership over Individual Defendants' share of the proceeds." Id. at 11 (emphasis added). For this reason, Defendants failed to adequately plead an essential element of the tort of conversion. See 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2008) ("[T]he court will not accept conclusory allegations concerning the legal effect of the events the plaintiff has set out if these allegations do

not reasonably follow from the pleader's description of what happened, or if these allegations are contradicted by the description itself.").

Since Defendants failed to plausibly allege Plaintiffs possessed the $297,686 without authorization, they failed to state a claim for conversion under North Carolina law.

### III. ORDER

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Dismiss Counterclaim Count III (Conversion) under Federal Rule of Civil Procedure 12(b)(6), (Doc. No. 31), is GRANTED.

IT IS SO ORDERED.

Signed: June 13, 2022

*[signature]*

Frank D. Whitney
United States District Judge