# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

Scott E. Dimmick and      :
Jodie C. Dimmick,      :
     :
         Plaintiffs,    :
     :
     vs.      :     No. 3:21-cv-00459-FDW-DCK
     :
Partners Insurance Agency, Inc.,   :
Emerson L. Dimmick, and     :
Karen A. Dimmick,      :
     :
         Defendants. :

---

## Motion of Plaintiffs Scott E. Dimmick and Jodie C. Dimmick to File Amended Complaint

Plaintiffs Scott E. Dimmick and Jodie C. Dimmick (collectively "Plaintiffs") by undersigned counsel move the court to grant leave to file an amended complaint in this matter against Defendants Partners Insurance Agency, Inc., Emerson L. Dimmick and Karen A. Dimmick (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 15 and this Court's case management order of August 9, 2022. ECF Doc. #40.

1. This case originated in the Middle District of Pennsylvania ("Middle District") when Plaintiffs filed a complaint on February 26, 2021, stating various causes of action against Defendants.

2.     The case was transferred to this Court by order of the Middle District of Pennsylvania dated August 31, 2021.

3.     On December 2, 2021, Defendants filed an answer and counterclaims to Plaintiffs' complaint.

4.     In the answer and counterclaims, Defendants challenged Plaintiffs' entitlement to payment under a contract which attached as Exhibit A to the complaint.

5.     On June 13, 2022 the Court dismissed one of defendants' stated counterclaims, to wit, Count III for conversion.  ECF Doc. #35.

6.     On August 9, 2022, the Court entered a case management order granting the parties until October 3, 2022, to file a motion for leave to amend the pleadings.  ECF Doc. #40.

7.     Attached hereto as Exhibit A is a proposed amended complaint Plaintiffs wish to file.

8.     The proposed amended complaint provides additional context to the causes of action stated in the original complaint.

9.     The proposed amended complaint additionally adds a cause of action seeking relief in the nature of reformation of the parties' contract if the Court should find that the contract between the parties as written should not entitle Plaintiffs to relief as prayed for in the complaint.

10.     The proposed amended complaint additionally states an additional claim for relief against Defendant Emmerson Dimmick in the alternative for similar reasons.

11.     The proposed amendments relate back to the date of the original pleading because it asserts a claim that rose out of "the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]"  See Fed. R. Civ. P. 15(c)(1)(B).

12.     Plaintiffs had previously emailed this proposed amended complaint to defendants' counsel on July 5, 2022 requesting a stipulation for leave to amend.[1]

13.     Although subsequently discussing the request for proposed amendment with Ryan Tiede, Esquire, counsel for Defendants after the proposed amended complaint had been sent to him, Defendants have not through counsel indicated whether they concur or do not concur with the filing of the amended complaint.  Accordingly, counsel for Plaintiffs assumes that there is not concurrence.

---

[1]  The proposed amended complaint was sent to opposing counsel without exhibits, but such exhibits were known to Plaintiffs, being 1) Exhibit A to the original complaint, and 2) an email Defendant Emerson Dimmick had sent from a Partners Insurance email address to Plaintiff Jodie Dimmick in 2020 (which in turn responded to an email Plaintiff Jodie Dimmick had original sent to Emerson Dimmick), which email is referred to and quoted within the body of the proposed amended complaint.  *See* Exhibit B to proposed Amended Complaint (emails between Emerson Dimmick and Jodie Dimmick).

WHEREFORE, Plaintiffs pray the Court to grant leave to plaintiffs to file an amended complaint substantially in the form attached hereto.

Respectfully submitted,                    Respectfully submitted,

**STAM LAW FIRM**                          **METTE, EVANS & WOODSIDE**

By:  /s/ R. Daniel Gibson          By:  /s/ Aaron D. Martin
R. Daniel Gibson                        Aaron D. Martin
N.C. State Bar No. 49222                PA Atty. I.D. No. 76441
510 W. Williams Street                  3401 North Front Street
Apex, NC 27502                          Harrisburg, PA  17110
(919) 362-8873 (phone)                  (717) 232-5000 (phone)
(919) 387-7329 (fax)                    (717) 236-1816 (fax)
dan@stamlawfirm.com                     admartin@mette.com
*Attorneys for Plaintiffs*              *Attorneys for Plaintiffs*
                                        *Pro Hac Vice*

Date: October 3, 2022.

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

Scott E. Dimmick and                     :
Jodie C. Dimmick,                        :
                                         :
                    Plaintiffs,          :
                                         :
        vs.                              :        No. 3:21-cv-00459-FDW-DCK
                                         :
Partners Insurance Agency, Inc.,         :        **JURY TRIAL DEMANDED**
Emerson L. Dimmick, and                  :
Karen A. Dimmick,                        :
                                         :
                    Defendants.          :

_____

## Amended Complaint

Plaintiffs Scott E. Dimmick and Jodie C. Dimmick file this amended complaint against Defendants Partners Insurance Agency, Inc., Emerson L. Dimmick and Karen A. Dimmick.

## Parties

1.      Plaintiffs Scott E. Dimmick (individually "Scott") and Jodie C. Dimmick (individually "Jodie"), husband and wife (collectively "Plaintiffs") are adult individuals domiciled in York County, Pennsylvania.

2.      Partners Insurance Agency, Inc. ("Partners Insurance"), is a corporation organized and existing under the laws of the State of North Carolina

that maintains a regular place of business at 17505 West Catawba Avenue, Suite 250, Cornelius, North Carolina 28031.

3.     Defendants Emerson L. Dimmick (individually "Emerson") and Karen A. Dimmick (individually "Karen"), husband and wife (collectively "Individual Defendants"), are adult individuals domiciled in the State of North Carolina.

4.     At all times relevant hereto, Defendant Emerson was the president of Partners Insurance.

5.     At all times relevant hereto, Defendant Karen was the vice president of Partners Insurance.

6.     At all times relevant hereto, both Individual Defendants were the sole equity owners of Partners Insurance.

**Jurisdiction and Venue**

7.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

8.     Plaintiffs are citizens of Pennsylvania, and Defendants are citizens of North Carolina.

9.     Venue is in this Court pursuant to order of transfer previously entered issued by the United States District Court for the Middle District of Pennsylvania.

10.     Plaintiffs seek both equitable relief and monetary damages in excess of seventy-five thousand dollars ($75,000) exclusive of interest and costs.

## Facts

### *The Parties' Agreement of Sale*

11.     Plaintiffs and Individuals Defendants were previously all shareholders in Stanley Insurance Services ("SIS"), a North Carolina limited liability corporation in the business of selling insurance.

12.     On or about January 1, 2018, an agreement ("Agreement") was concluded by which "certain insurance accounts, customer information, real estate, and office equipment and all rights and renewals related thereto" were sold to Defendant Partners Insurance.  A copy of the Agreement is attached as Exhibit A.

13.     The Agreement was not written by a lawyer, and no party had legal counsel advising on its verbiage.

14.     Plaintiffs, who jointly owned a one-half interest in SIS, and Individual Defendants, who jointly owned the other one-half interest in SIS, all signed the Agreement.

15.     The intent of the parties when entering into the Agreement was for Defendant Partners Insurance to pay to Plaintiffs the total sum of $1,105,372 for the sale of Plaintiffs' one-half interest in SIS.  Exhibit A, p. 2, ¶ 2.

3

16. The parties intended that the purchase price would be composed of the following two parts,

     a. $720,000 payable by Partners Insurance to Plaintiffs over a six-year period at the rate of $10,000 per month for 72 consecutive months, with the first payment to be made on or before July, 1, 2018; and

     b. $385,372.08 payable by Partners Insurance at the rate of $5,352.39 per quarter in satisfaction of premiums for a $1,000,000 insurance policy on Scott E. Dimmick's life, with payments to begin in March 2018.[1]

See Exhibit A, p. 2 ¶ 2(B).

17. Prior to signing the Agreement, Scott and Emerson had discussed the valuation of SIS and had collectively agreed that the sums to be paid would reflect one-half of SIS's estimated value.

18. After the Agreement was signed, Defendants began to make the monthly $10,000 payments to Plaintiffs as well as the quarterly $5,352.39 premium payments on the policy insuring Scott's life.

---

[1] The Agreement contains a discrepancy of eight cents ($0.08) between the total stated purchase price and the combined sum of regular monthly payments and quarterly payments of insurance premiums.

*The Breach of the Agreement*

19.    Defendants Partners Insurance made only twenty-one payments to Plaintiffs under the Agreement for a total of $210,000 and then stopped, failing to make any monthly payments for the months of April 2020 through the present.

20.    Defendant Partners Insurance has also failed to make various life insurance payments in a timely manner.

21.    In an email dated April 17, 2020, sent on behalf of all defendants, Defendant Emerson Dimmick (self-identified in the email by his nickname "Chip") invoked a perceived personal slight involving other members of the Dimmick family by stating,

> So in regards to the monthly payments and life insurance, I am not paying one cent until [Plaintiffs] have the courage to apologize to all involved peronsally [sic].

A copy of such email is attached as Exhibit B.

22.    Emerson Dimmick's stated refusal to pay "one cent" of the "monthly payments" or "life insurance" until he would receive a personal apology from Plaintiffs was made without justification under the Agreement.

23.    The email also reveals the parties' intention that the entirety of the payments identified in the Agreement were to be made to Plaintiffs alone.

24.    In particular, the email contains Emerson Dimmick's statement to Jodie Dimmick as follows,

5

When we went our separate ways, the business was valued at $2,400,000 we owed Bobby $699,990 dollars. So the fair value was $1,700,000. Half is $850,000 not $1,150,000.

Exhibit B.

25.     Emerson Dimmick's reference to "the business" is to SIS, and his reference to "[h]alf" is to the buy-out payment Plaintiffs are to receive as one-half owners of SIS.

26.     Thus, while complaining that $850,000 should have been the actual one-half buy-out value for SIS, Emerson identified the agreed-upon value of a one-half interest in SIS as $1,150,000 – the approximate combined cash and life insurance premium payments to be paid to Plaintiffs under the Agreement.

27.     Accordingly, the email establishes that the president of Partners Insurance – payor under the Agreement – viewed total payments under the Agreement payable to Plaintiffs in consideration of sale of their one-half interest in SIS totaled $1,150,000.

28.     This was the intention of the parties when entering into the Agreement.

29.     Such view is consistent with the twenty-one months of history immediately following the parties signing of the Agreement, whereby full $10,000 payments were made to Plaintiffs each month and the full premiums were paid on the policy of insurance on Scott's life.

6

30.     Defendant Partners Insurance currently owes $510,000 to Plaintiffs in monthly payments as well as all unpaid life insurance premiums scheduled to be paid under the Agreement due to the company's anticipatory repudiation of its obligations under the Agreement.

31.     In directing Partners Insurance not to make payments as required under the Agreement, Emerson Dimmick as corporate president tortiously and without justification interfered with Partners Insurance's duty of payment under the Agreement toward Plaintiffs, inducing Partners Insurance not to make payment to Plaintiffs as required thereunder.

32.     Such action fulfilled the threat contained in Emerson Dimmick's email in which he stated his refusal to pay "one cent" until receiving the demanded apology from Scott Dimmick for the perceived personal slight.

33.     Some delinquent life insurance premiums were, however, subsequently paid at later dates, which plaintiffs believe to have been in October 2020, but with no explanation from any Defendant of any reason for the delinquency or the sudden payment of delinquent premiums due.

34.     The failure of Defendant Partners Insurance to make timely payments under the Agreement confirms the anticipatory repudiation of performance under the Agreement and the effect of Defendant Emerson Dimmick's tortious interference with the Agreement between Plaintiffs and Partners Insurance.

7

## Count I
## Breach of Contract
## (Against Defendant Partners Insurance Agency)

35.    The assertions of the foregoing paragraphs are incorporated by reference.

36.    The Agreement is a valid contract between Plaintiffs and Defendant Partners Insurance.

37.    The Agreement opens with this language,

> Scott E. Dimmick & Jodie C. Dimmick, individuals residing in York County, Pennsylvania.  Emerson L. Dimmick & Karen A. Dimmick, individuals residing in Mecklenburg County North Carolina.  ("SIS") Stanley Insurance Services, a North Carolina limited liability company will be referred to as "Sellers," and when used as "SIS" throughout this document, it is referencing all parties affiliated with. ("PIA") Partners Insurance Agency, a North Carolina Corporation will be referred to as "Buyer."

Exhibit A, p. 1.

38.    The Agreement then uses the term "Sellers" to refer to Plaintiffs Scott Dimmick and Jodie Dimmick exclusively.

39.    For example, Section 6 includes a covenant not to compete by Plaintiffs Scott Dimmick and Jodie Dimmick yet concludes "[t]he covenants of Sellers set forth in this Section…"  SIS makes no covenant in Section 6 nor is SIS even mentioned in Section 6.

8

40.     The Parties' intent in the agreement was to treat Plaintiffs Scott Dimmick and Jodie Dimmick as the sellers of one half of the total ownership of SIS for the sum of $1,150,000 with Partners Insurance treated as the buyer.

41.     Defendant Partners Insurance's repudiation of its duty to make monthly payments in full and its failure to timely pay some life insurance premiums when due constitute a default on Partners Insurance's obligations to pay all sums due during the term of the Agreement.

42.     Defendant Partners Insurance has denied to Plaintiffs the benefit of their bargain for which they must be made whole.

WHEREFORE, Plaintiffs pray the Court to ENTER JUDGMENT in their favor and against Defendant Partners Insurance in the amount of $510,000, plus the value of unpaid life insurance premiums and those anticipated but not yet paid, costs of suit and whatever other relief as is just and equitable.

**Count II**
**Tortious Interference With Contractual Relations**
**(Against Defendant Emerson Dimmick)**

43.     The assertions of the foregoing paragraphs are incorporated by reference.

44.     Emerson Dimmick, without justification, induced and proximately caused Defendant Partners Insurance to fail to fulfill its obligations under the Agreement and breach the same.

9

45.     As a direct and proximate cause thereof, Plaintiffs have suffered loss for which they must be compensated.

46.     Such tortious interference was willful and wanton with specific intent to harm Plaintiffs' financial interests and warrants imposing punitive damages.

WHEREFORE, Plaintiffs pray the Court to ENTER JUDGMENT in their favor and against Defendant Emerson Dimmick for damages sufficient to compensate Plaintiffs for losses incurred because of such defendant's tortious interference with his Agreement with Partners Insurance, punitive damages, plus costs of suit and whatever other relief as is just and equitable.

## Count III
### Unjust Enrichment
### (Against Defendant Karen Dimmick)

47.     The assertions of the foregoing paragraphs are incorporated by reference.

48.     Because of her ownership interest in Partners Insurance, Karen Dimmick has been unjustly enriched by Partners Insurance's failure to make payment to Plaintiffs as required.

49.     Karen Dimmick must make restitution to Plaintiffs for such benefit as she has unjustly received because of Defendant Partners' Insurance's bad faith failure to comply with the terms of parties' Agreement.

10

WHEREFORE, Plaintiffs pray the Court to ENTER JUDGMENT in their favor and against Defendant Karen Dimmick for restitutionary damages for the benefit to which she was unjustly enriched by the failure of Partners Insurance to make payment to Plaintiffs under the Agreement, plus costs of suit and whatever other relief as is just and equitable.

## Count IV
## Breach of Contract
### (Against Defendant Emerson Dimmick)

50.     The assertions of the foregoing paragraphs are incorporated by reference.

51.     The succeeding paragraphs are pleaded in the alternative to Count I if the Court should apply the Agreement as written to render Plaintiffs and Individual Defendants as sellers jointly entitled to the total $1,150,000 benefit to be paid by Partners Insurance under the Agreement.

52.     The Agreement says that "Stanly Insurance Services, a North Carolina limited liability company, will be referred to as 'Sellers.' "

53.     If the Court applies the Agreement as literally written, SIS is Sellers.

54.     If SIS means Sellers, then any proceeds from the Agreement were property of SIS, a North Carolina LLC.

55.     SIS had no operating agreement.

11

56. SIS's managers, members, or both had authority to decide how to distribute the Agreement's proceeds.

57. SIS's managers, members, or both decided how to distribute the Agreement's proceeds.

58. The actions of SIS's managers and members are the best evidence of SIS's decision on how to distribute the Agreement's proceeds: SIS distributed no proceeds to Defendant Emerson Dimmick. Instead, Defendant Emerson Dimmick paid Plaintiff Scott E. Dimmick $10,000 monthly for 21 consecutive months and paid premiums on Plaintiff Scott E. Dimmick's life insurance policy.

WHEREFORE, Plaintiffs pray the Court to ENTER JUDGMENT in their favor and against Defendant Emerson Dimmick for damages sufficient to compensate Plaintiffs for losses incurred because of such defendant's breach of contract, plus costs of suit and whatever other relief as is just and equitable.

## Count V
## Reformation of Contract

59. The assertions of the foregoing paragraphs are incorporated by reference.

60. If the Court should determine that the Agreement as written mistakenly includes Defendants Emerson Dimmick and Karen Dimmick as payees or co-payees of any sums to be paid under the Agreement, the Court should reform the Agreement to reflect the Parties' intent that only Plaintiffs are such payees.

61.     The Court can reform the Agreement where due to, among other things, "the mistake of the draftsman," it "does not express the true intentions of the parties." *Wells Fargo Bank, N.A. v. Coleman*, 239 N.C. App. 239, 248, 768 S.E.2d 604, 611 (2015).

62.     Plaintiffs assert that if the Agreement does not facially or through use of extrinsic evidence establish Plaintiffs' sole entitlement to the monthly payments thereunder, such is because of a mistake of the draftsman or mutual mistake of fact as to what the parties were signing, and the Agreement does not express the Parties' true intentions related to its definition of Sellers or at least is ambiguous.

63.     In a now dismissed counterclaim made by Individual Defendants in this case, Individual Defendants Emerson Dimmick and Karen Dimmick asserted that Plaintiffs had converted property belonging to them in the form of payments from Defendant Partners Insurance.

64.     For such a claim to succeed, even in the alternative, Individual Defendants would have had to be both Sellers *and* identical to the buyer – Defendant Partners Insurance – in the Agreement.

65.     If this were not so, Plaintiffs could not have converted any property belonging to Defendants Emerson Dimmick and Karen Dimmick, because payments were made by Defendant Partners Insurance.

66.     The Agreement's references to Plaintiffs Scott Dimmick and Jodie

Dimmick as Sellers alleged above, with no similar references to Defendants

Emerson Dimmick and Karen Dimmick as Sellers, reflect the Parties' intent not to

treat Defendants Emerson Dimmick and Karen Dimmick as Sellers.

67.     Further, the Agreement contains representations of Plaintiffs as

individuals, asserting,

> Scott & Jodie Dimmick has [sic] the requisite power and authority to
> enter into this Agreement. The execution, delivery and performance of
> this Agreement, and the consummation of the transactions provided
> for in this Agreement, have been duly and validly approved by all
> necessary action on the part of SIS. This Agreement is the valid and
> binding obligation of SIS and enforceable against each of them in
> accordance with its terms, subject to bankruptcy, insolvency,
> reorganization, moratorium and similar laws of creditors, and subject
> to the effect of general principles of equity, whether applied by a court
> of law or equity.

Exhibit A, p. 4, § 5(B)(iii).

68.     Defendant Partners' Insurance Agency's exclusive payments to

Plaintiffs Scott Dimmick and Jodie Dimmick for the full monthly amount payable

under the Agreement reflect the Parties' intent not to treat Defendants Emerson

Dimmick and Karen Dimmick as Sellers under the Agreement.

69.     The receipt of funds solely by Plaintiffs Scott Dimmick and Jodie

Dimmick for twenty-one consecutive months with no request for funds by

Defendants Emerson Dimmick and Karen Dimmick reflects the Parties' intent not

to treat Defendants Emerson Dimmick and Karen Dimmick as Sellers.

14

WHEREFORE, Plaintiffs pray the Court to ENTER JUDGMENT and GRANT RELIEF reforming the Agreement to correct a draftsmen's error and reflect the Parties' intent that Defendants Emerson Dimmick and Jodie Dimmick are not Sellers under the Agreement and that payments under the Agreement are the sole and exclusive property of Plaintiffs Scott Dimmick and Jodie Dimmick.

Respectfully submitted,

**METTE, EVANS & WOODSIDE**

/s/ Aaron D. Martin

By: _____

Aaron D. Martin
Pa. Atty. I.D. No. 76441
3401 North Front Street
Harrisburg, PA 17110
(717) 232-5000
admartin@mette.com

Respectfully submitted,

**STAM LAW FIRM, PLLC**

/s/ Dan Gibson

By: _____

Dan Gibson
510 West Williams Street
Apex, NC 27502
(919) 362-8873
dan@stamlawfirm.com

Date: July 5, 2022

15

# EXHIBIT A



## ACCOUNT PURCHASE AGREEMENT

THIS ACCOUNT PURCHASE AGREEMENT (The "Agreement") is made as of the 1st day of January, 2018 by and among; Scott E. Dimmick & Jodie C. Dimmick, individuals residing in York County, Pennsylvania, Emerson L. Dimmick & Karen A. Dimmick, individuals residing in Mecklenburg County, North Carolina, ("SIS") Stanly Insurance Services, a North Carolina limited liability company, will be referred to as "Sellers", and when used as "SIS" throughout this document, it is referencing all parties affiliated with. ("PIA") Partners Insurance Agency, a North Carolina corporation will be referred to as "Buyer".

WHEREAS, Sellers desire to sell, and buyer desires to purchase, certain insurance accounts, customer information, real estate, and office equipment and all rights and renewals related thereto ("collectively referred to herein as "Property");

NOW, THEREFORE, in consideration of the foregoing and of the mutual promises and covenants and the other consideration described in this agreement, the parties agree as follows:

1. **CERTAIN DEFINITIONS.** For purposes of this Agreement, the following terms shall have the following meanings:

    a. "Accounts" shall mean; Direct Transfer Accounts: All customer accounts, and all expirations thereof, representing insurance policies in effect as of the date of this Agreement.

    b. "Customers shall mean; all information related to customers listed in section "1(a)" above.

17505 W Catawba Ave  Suite 250 Cornelius, NC 28031 Phone 704.8969865 Fax 704.655.9784
www.partnersinsuranceagency.com

c. "Customer Information" shall mean; the list of customers, their contact information, information regarding insurance coverages for Customers, and any other information maintained by Murray and/or MIM with respect to the Customers.

d. "Real Estate" shall mean; the property address listed below; and at those property addresses, to include and comprise of; the land, the buildings on it, and any other "real property" associated at the following addresses:

    i. 108 West Catawba Ave., Mount Holly, North Carolina, 28120
    ii. 320 North Second Street, Albemarle, North Carolina, 28001

e. "Office Equipment" shall mean; any asset such as furnishings, computers, or equipment essential to the everyday operations of the company, at the previously disclosed locations in section "1.(d)" above.

## 2. PURCHASE PRICE.

a. Buyer shall pay to Sellers an amount equal to One Million One Hundred Five Thousand Three Hundred Seventy Two Dollars ($1,105,372). Seven Hundred Twenty Thousand Dollars ($720,000) shall be paid over a Six (6) year period or $10,000 per month starting on or before July, 1st 2018 for 72 consecutive months.

b. In addition to the above mentioned, the Buyer agrees to pay for a Life Insurance Policy owned by Scott E. Dimmick. Policy Number: U558044, pre determined payments in the amount of $5352.39 per QUARTER for the Remaining 18 YEARS totaling an amount of ($385,372.08), payments to begin in March of 2018.

## 3. TRANSFER OF ACCOUNTS.

a. Transfer. By execution of this Agreement each Seller hereby agrees to sell, assign and transfer to Buyer, and Buyer agrees to purchase from each Seller, on the terms set forth herein, all of such Sellers' right, title and interest in and to:

    i. The Accounts;

    ii. All rights and protections of Stanly Insurance Services with respect to the Customers and;

    iii. All Customer Information, including all books, records, files, correspondence and work in progress as of the Closing Date pertaining to the Accounts, whether on paper or electronic format or both.

b. Post-Closing Rights and Obligations: Buyer shall have sole responsibility for servicing of the Accounts, Real Estate Referenced in "1.(d)" above, any and all obligations previously made to Robert D. Black, and Robert D. Black Insurance Services, and after Closing Date, and neither Seller shall have any obligations with respect to the Accounts after the Closing Date except as otherwise expressly provided herein.

c. No Assumption of Liabilities; Seller shall assume no liabilities or payables of Stanly Insurance Services relating to the Accounts, Real Estate Referenced in "1.(d)" above, any and all obligations previously made to Robert D. Black, and Robert D. Black Insurance Services, except as otherwise expressly provided herein.

4. CLOSING.

The closing of the transaction contemplated herein (the "Closing")shall be held on or before Sunday, December 31, 2018 (the "Closing Date").

5. REPRESENTATIONS AND WARRANTIES.

a. Buyer's Representations. Buyer represents and warrants to Sellers as follows:

   i. Buyer has the requisite corporate power and authority to enter into this agreement and to carry out the transactions provided for in this Agreement, have been duly and validly approved by all necessary action on the part of Buyer; and this Agreement is the valid and binding obligation of Buyer and is enforceable against Buyer in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium and similar laws of creditors, and subject to the effect of general principles of equity, whether applied by a court of law or equity.

   ii. Neither the execution and delivery of this Agreement, nor the consummation of the transactions described in this Agreement, nor compliance by Buyer with any of the provisions hereof, will conflict with or result in a breach of the terms or conditions of the Articles of Incorporation or Bylaws of Buyer or any agreement to which Buyer is a party.

   iii. The negotiations relating to this Agreement, and consummation of the transactions described in the Agreement, will not give rise to any claims against any party to this Agreement for a finder's fee, brokerage commission or like payment as a result of any agreement, understanding or action by Buyer.

b. Seller's Representations. Sellers, jointly and severally, represent and warrant Buyer as follows:

i. There is no suit, action, or dispute of any nature which exists or is pending, or, to the knowledge of any Seller, is contemplated or threatened, in which Stanly Insurance Services is engaged or involved or to which is or would be party, and which relates to or involves in any way any Account or any insurance policies or coverages in connection with any Account.

ii. The negotiations relating to this Agreement, and consummation of the transaction described in this Agreement, will not give rise to any claims against any party to this Agreement for a finder's fee, brokerage commission or like payment as a result of any agreement, understanding or action by Stanly Insurance Services.

iii. Scott & Jodie Dimmick has the requisite power and authority to enter into this Agreement. The execution, delivery and performance of this Agreement, and the consummation of the transactions provided for in this Agreement, have been duly and validly approved by all necessary action on the part of SIS. This Agreement is the valid and binding obligation of SIS and enforceable against each of them in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium and similar laws of creditors, and subject to the effect of general principles of equity, whether applied by a court of law or equity.

iv. Neither the execution and delivery of this Agreement, nor the consummation of the transactions described in this Agreement, nor compliance by SIS with any of the provision hereof, will conflict with or result in a breach of any agreements to which all members of SIS, is a party.

c. All the representations and warranties of the parties shall survive the Closing Date and consummation of transactions described in the Agreement.

## 6. NON-COMPETION AND NON-SOLICITATION: CONFIDENTIALITY.

So long as Buyer is not in default of any obligation set forth in this Account Purchase Agreement or obligations delivered at Closing, before or after the Closing:

a. Scott & Jodie Dimmick, jointly and severally, hereby covenant and agree that for a period of three (3) years following the Closing Date neither Scott E. Dimmick nor Jodie C. Dimmick will, directly or indirectly or through any employee, agent or contractor,
    (A) solicit any insurance business for any Customer, or
    (B) sell, bind, renew or place any insurance policy or coverage to or for any Customer or solicit any customer for such purpose, or
    (C) solicit, sell, bind, renew or place any policies with respect to the Accounts. This only applies to Property and Casualty business. This covenant applies only within a Fifty (50) mile radius of Cornelius, NC.

b. Scott & Jodie Dimmick hereby acknowledge that the Customer Information being transferred to Buyer hereunder is highly confidential, and such confidentiality is critical to the benefit of this transaction to Buyer. Therefore, Scott & Jodie Dimmick, jointly and severally, hereby covenant and agree not to directly or indirectly or through any employee, agent or contractor,

(A) use the Customer Information in any insurance business after the date of this Agreement, except as provided herein, or

(B) disclose any aspect of the Customer Information to any party after the date of this Agreement.

c. The covenants of Sellers set forth in this Section shall survive the Closing of the transaction contemplated herein for a period of five (5) years.

## 7. INDEMNIFICATION.

a. Indemnity by Buyer. Buyer agrees to defend, indemnify and hold harmless Sellers and their officers, directors, employees and agents from and against any claim, cost, expense, liability, cause of action, obligation, loss or damage (including reasonable attorney's fees and expenses) which result from or arise out of any material inaccuracy or material breach of any representation, warranty, covenant or agreement of Buyer contained in or made pursuant to this Agreement.

b. Indemnity by Sellers. Each Seller agrees to defend, indemnify and hold harmless Buyer and its officers, directors, employees and agents from and against any claim, cost, expense, liability, cause of action, obligation, loss or damage (including reasonable attorney's fees and expenses) which result from or arise out of: (i) any material inaccuracy or material breach of any representation, warranty, covenant or agreement of each Seller contained in or made pursuant to this Agreement; (ii) any error or omission of either Seller or any of their respective officers, directors, employees, agents, producers or representatives, or any other person or entity under either Seller's control, in handling or servicing of any Account or Record prior to the Closing Date, or in connection with the sale, binding, renewal or placement of any policy that any Account represents; and (iii) any payable or similar liability relating to or arising on or before the Closing Date from any policy that any Account represents, including any and all return premiums on any such policy. Notwithstanding anything set forth in this Section 8 (b) to the contrary, after the first renewal or expiration of each Account defined in Section 1 (a) i and ii by Buyer or any of their respective officers, directors, employees, agents, producers or representatives, or any other person or entity under either Buyer's control, in handling or servicing of any Account or Customer Information after the Closing, or in connection with the sale, binding, renewal or placement of any policy that any account represents, the Sellers are released from any and all liability and the indemnity set forth herein. Buyer agrees to defend, indemnify and hold harmless Sellers from and against any claim, cost, expense, liability or cause of action, obligation, loss or damage (including reasonable attorneys' fees and expenses) which result from or arise out of such actions.

Case 3:21-cv-00459-FDW-DCK   Document 41   Filed 10/03/22   Page 26 of 30

c. Notice. The indemnified party shall give the other party prompt written notice and a description of any event or other matter which may give rise to a claim against the indemnifying party for indemnification under this Section.

d. Survival. The indemnification obligations set forth herein shall survive the Closing of the transaction contemplated herein

## 8. OTHER PROVISIONS

a. Expenses. Each party shall pay its own expenses in connection with this Agreement.

b. Successors. The provisions of this Agreement shall be binding upon and inure to the benefit of the respective parties hereto, and their respective successors, assigns, heirs and personal representatives.

c. Governing Law. This Agreement shall be construed and enforced in accordance with the laws of the State of North Carolina, except for its conflict of law rules.

d. Severability. If any term of this Agreement shall be deemed invalid or unenforceable in whole or in part, the remainder of this Agreement and its application shall not be affected, and each term shall be valid and enforceable to the full extent permitted by law.

e. Entire Agreement. This is the sole agreement among Sellers and Buyer with respect to the transactions completed hereby. There are no other agreements, promises, representations, warranties, covenants or undertakings other than those expressly set forth or referred to in this Agreement. This Agreement shall not be altered, corrected, modified, amended, limited or waived in any respect or manner without the prior written consent of all parties. This Agreement supersedes all prior written or oral discussions and agreements between the parties with respect to the transactions contemplated hereby. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent or other breach of that provision or any breach of any other provision of this Agreement.

f. Counterparts. This Agreement may be executed in one or more counterparts, all of which taken together shall constitute one instrument



**Superior Protection for your Home, Life, Auto & Commercial Needs**

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first above written.

**BUYER:**

Partners Insurance Agency, Inc.

By: _____

Emerson L. Dimmick

**SELLERS:**

_____
Emerson L. Dimmick

_____
Scott E. Dimmick

_____
Karen A. Dimmick

_____
Jodie C. Dimmick

Stanly Insurance Services

By: _____

Scott E. Dimmick

Title: _____Managing Partner_____

17505 W Catawba Ave. Suite 250 Cornelius, NC 28031 Phone 704.8969865 Fax 704.655.9784

**EXHIBIT B**


## Hello
**2 messages**

---

**Jodie Dimmick** <jodiedimmick@gmail.com>                                                    Fri, Apr 17, 2020 at 11:38 AM
To: chip@partnersinsuranceagency.com

Hello Chip,

I hope you are doing well during this crazy time that we're all part of.

This is very hard for me to approach. I was having trouble accessing the PNC banking system a few days ago, apparently there was a problem with their system. In doing so I noticed that April's deposit had not been done. I'm thinking that there may have been trouble on your end as well. With that being said, I know last month that there was some texting, I'm hoping that this is not a result of that. Please know that those deposits are not intended for us, but rather Sarah and JR. I think both you and I feel sometimes as though we are the ones stuck in the middle. That's all I will say about this.

This part of the email is about me and no one else. Something has been pulling at me to make contact with you. Through all this insanity the past few years, you and I have never had a bad word between us. I would like to keep it that way. My hope is that if we come in contact with each other, be it 10 years or 20, that we can hug each other as we always did. I am using a different email address with the hope that this stays between you and me..only.

If you chose to respond or not respond, is totally up to you.
Thank you for taking the time to read this.


Jodie

---

**chip@partnersinsuranceagency.com** <chip@partnersinsuranceagency.com>                      Fri, Apr 17, 2020 at 12:30 PM
To: Jodie Dimmick <jodiedimmick@gmail.com>

Hello Jodie,
Great to hear from you. Yes these are crazy and uncertain times.
Last month two days before Emily's birthday, eleven days before Karen's 60th birthday and thirteen days before Emily's sixth anniversary of her death and a plate full of other usual bullshit Scott and Sarah decide it's the perfect time to accuse Tyler and Karen and threaten me with calling Erie's CEO because Sarah got a solicitation from a GEICO agent in Mechanicsburg. I told Scott I/we had nothing to do with this as we don't represent GEICO nor do we know where Sarah lives. Scott and Sarah then stated "we" we will see what you have to lose".
So in regards to the monthly payments and life insurance, I am not paying one cent until those two have the courage to apologize to all involved peronsally I have watched accusations, threats, criticism  etc, etc, etc ruin my side of the family. Now I guess it's my turn to be in the Dimmick Cess Pool Barrel. Well I am not taking it. I don't care if anyone ever speaks to me again.
After these apologizes are or not completed, we will then discuss a bigger problem. When we went our separate ways, the business was valued at $ 2,400,000 we owed Bobby $699,990 dollars. So the fair value was $1,700,000. Half is $850,000 not $1,150,000.
We were in a "partnership" that required all of us to have responsibilities to the business. I listened to accusations, threats, un realistic demands, complaints etc etc .
I hope you and everyone are well Jodie,
Chip