# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | | |
|---|---|---|
| Scott E. Dimmick and<br>Jodie C. Dimmick, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | No. 3:21-cv-00459-FDW-DCK |
| | : | |
| Partners Insurance Agency, Inc., | : | **JURY TRIAL DEMANDED** |
| Emerson L. Dimmick, and | : | |
| Karen A. Dimmick, | : | |
| | : | |
| Defendants. | : | |

## Amended Complaint

Plaintiffs Scott E. Dimmick and Jodie C. Dimmick file this amended complaint against Defendants Partners Insurance Agency, Inc., Emerson L. Dimmick and Karen A. Dimmick.

## Parties

1. Plaintiffs Scott E. Dimmick (individually "Scott") and Jodie C. Dimmick (individually "Jodie"), husband and wife (collectively "Plaintiffs") are adult individuals domiciled in York County, Pennsylvania.

2. Partners Insurance Agency, Inc. ("Partners Insurance"), is a corporation organized and existing under the laws of the State of North Carolina

that maintains a regular place of business at 17505 West Catawba Avenue, Suite 250, Cornelius, North Carolina 28031.

3. Defendants Emerson L. Dimmick (individually "Emerson") and Karen A. Dimmick (individually "Karen"), husband and wife (collectively "Individual Defendants"), are adult individuals domiciled in the State of North Carolina.

4. At all times relevant hereto, Defendant Emerson was the president of Partners Insurance.

5. At all times relevant hereto, Defendant Karen was the vice president of Partners Insurance.

6. At all times relevant hereto, both Individual Defendants were the sole equity owners of Partners Insurance.

**Jurisdiction and Venue**

7. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

8. Plaintiffs are citizens of Pennsylvania, and Defendants are citizens of North Carolina.

9. Venue is in this Court pursuant to order of transfer previously entered issued by the United States District Court for the Middle District of Pennsylvania.

10. Plaintiffs seek both equitable relief and monetary damages in excess of seventy-five thousand dollars ($75,000) exclusive of interest and costs.

## Facts

*The Parties' Agreement of Sale*

11. Plaintiffs and Individuals Defendants were previously all shareholders in Stanley Insurance Services ("SIS"), a North Carolina limited liability corporation in the business of selling insurance.

12. On or about January 1, 2018, an agreement ("Agreement") was concluded by which "certain insurance accounts, customer information, real estate, and office equipment and all rights and renewals related thereto" were sold to Defendant Partners Insurance. A copy of the Agreement is attached as Exhibit A.

13. The Agreement was not written by a lawyer, and no party had legal counsel advising on its verbiage.

14. Plaintiffs, who jointly owned a one-half interest in SIS, and Individual Defendants, who jointly owned the other one-half interest in SIS, all signed the Agreement.

15. The intent of the parties when entering into the Agreement was for Defendant Partners Insurance to pay to Plaintiffs the total sum of $1,105,372 for the sale of Plaintiffs' one-half interest in SIS. Exhibit A, p. 2, ¶ 2.

16. The parties intended that the purchase price would be composed of the following two parts,

    a. $720,000 payable by Partners Insurance to Plaintiffs over a six-year period at the rate of $10,000 per month for 72 consecutive months, with the first payment to be made on or before July, 1, 2018; and

    b. $385,372.08 payable by Partners Insurance at the rate of $5,352.39 per quarter in satisfaction of premiums for a $1,000,000 insurance policy on Scott E. Dimmick's life, with payments to begin in March 2018.[1]

See Exhibit A, p. 2 ¶ 2(B).

17. Prior to signing the Agreement, Scott and Emerson had discussed the valuation of SIS and had collectively agreed that the sums to be paid would reflect one-half of SIS's estimated value.

18. After the Agreement was signed, Defendants began to make the monthly $10,000 payments to Plaintiffs as well as the quarterly $5,352.39 premium payments on the policy insuring Scott's life.

---

[1] The Agreement contains a discrepancy of eight cents ($0.08) between the total stated purchase price and the combined sum of regular monthly payments and quarterly payments of insurance premiums.

*The Breach of the Agreement*

19. Defendants Partners Insurance made only twenty-one payments to Plaintiffs under the Agreement for a total of $210,000 and then stopped, failing to make any monthly payments for the months of April 2020 through the present.

20. Defendant Partners Insurance has also failed to make various life insurance payments in a timely manner.

21. In an email dated April 17, 2020, sent on behalf of all defendants, Defendant Emerson Dimmick (self-identified in the email by his nickname "Chip") invoked a perceived personal slight involving other members of the Dimmick family by stating,

> So in regards to the monthly payments and life insurance, I am not paying one cent until [Plaintiffs] have the courage to apologize to all involved peronsally [sic].

A copy of such email is attached as Exhibit B.

22. Emerson Dimmick's stated refusal to pay "one cent" of the "monthly payments" or "life insurance" until he would receive a personal apology from Plaintiffs was made without justification under the Agreement.

23. The email also reveals the parties' intention that the entirety of the payments identified in the Agreement were to be made to Plaintiffs alone.

24. In particular, the email contains Emerson Dimmick's statement to Jodie Dimmick as follows,

5

> When we went our separate ways, the business was valued at $2,400,000 we owed Bobby $699,990 dollars. So the fair value was $1,700,000. Half is $850,000 not $1,150,000.

Exhibit B.

25. Emerson Dimmick's reference to "the business" is to SIS, and his reference to "[h]alf" is to the buy-out payment Plaintiffs are to receive as one-half owners of SIS.

26. Thus, while complaining that $850,000 should have been the actual one-half buy-out value for SIS, Emerson identified the agreed-upon value of a one-half interest in SIS as $1,150,000 – the approximate combined cash and life insurance premium payments to be paid to Plaintiffs under the Agreement.

27. Accordingly, the email establishes that the president of Partners Insurance – payor under the Agreement – viewed total payments under the Agreement payable to Plaintiffs in consideration of sale of their one-half interest in SIS totaled $1,150,000.

28. This was the intention of the parties when entering into the Agreement.

29. Such view is consistent with the twenty-one months of history immediately following the parties signing of the Agreement, whereby full $10,000 payments were made to Plaintiffs each month and the full premiums were paid on the policy of insurance on Scott's life.

30. Defendant Partners Insurance currently owes $510,000 to Plaintiffs in monthly payments as well as all unpaid life insurance premiums scheduled to be paid under the Agreement due to the company's anticipatory repudiation of its obligations under the Agreement.

31. In directing Partners Insurance not to make payments as required under the Agreement, Emerson Dimmick as corporate president tortiously and without justification interfered with Partners Insurance's duty of payment under the Agreement toward Plaintiffs, inducing Partners Insurance not to make payment to Plaintiffs as required thereunder.

32. Such action fulfilled the threat contained in Emerson Dimmick's email in which he stated his refusal to pay "one cent" until receiving the demanded apology from Scott Dimmick for the perceived personal slight.

33. Some delinquent life insurance premiums were, however, subsequently paid at later dates, which plaintiffs believe to have been in October 2020, but with no explanation from any Defendant of any reason for the delinquency or the sudden payment of delinquent premiums due.

34. The failure of Defendant Partners Insurance to make timely payments under the Agreement confirms the anticipatory repudiation of performance under the Agreement and the effect of Defendant Emerson Dimmick's tortious interference with the Agreement between Plaintiffs and Partners Insurance.

# Count I
# Breach of Contract
# (Against Defendant Partners Insurance Agency)

35. The assertions of the foregoing paragraphs are incorporated by reference.

36. The Agreement is a valid contract between Plaintiffs and Defendant Partners Insurance.

37. The Agreement opens with this language,

> Scott E. Dimmick & Jodie C. Dimmick, individuals residing in York County, Pennsylvania. Emerson L. Dimmick & Karen A. Dimmick, individuals residing in Mecklenburg County North Carolina. ("SIS") Stanley Insurance Services, a North Carolina limited liability company will be referred to as "Sellers," and when used as "SIS" throughout this document, it is referencing all parties affiliated with. ("PIA") Partners Insurance Agency, a North Carolina Corporation will be referred to as "Buyer."

Exhibit A, p. 1.

38. The Agreement then uses the term "Sellers" to refer to Plaintiffs Scott Dimmick and Jodie Dimmick exclusively.

39. For example, Section 6 includes a covenant not to compete by Plaintiffs Scott Dimmick and Jodie Dimmick yet concludes "[t]he covenants of Sellers set forth in this Section…" SIS makes no covenant in Section 6 nor is SIS even mentioned in Section 6.

8

40. The Parties' intent in the agreement was to treat Plaintiffs Scott Dimmick and Jodie Dimmick as the sellers of one half of the total ownership of SIS for the sum of $1,150,000 with Partners Insurance treated as the buyer.

41. Defendant Partners Insurance's repudiation of its duty to make monthly payments in full and its failure to timely pay some life insurance premiums when due constitute a default on Partners Insurance's obligations to pay all sums due during the term of the Agreement.

42. Defendant Partners Insurance has denied to Plaintiffs the benefit of their bargain for which they must be made whole.

WHEREFORE, Plaintiffs pray the Court to ENTER JUDGMENT in their favor and against Defendant Partners Insurance in the amount of $510,000, plus the value of unpaid life insurance premiums and those anticipated but not yet paid, costs of suit and whatever other relief as is just and equitable.

## Count II
## Tortious Interference With Contractual Relations
### (Against Defendant Emerson Dimmick)

43. The assertions of the foregoing paragraphs are incorporated by reference.

44. Emerson Dimmick, without justification, induced and proximately caused Defendant Partners Insurance to fail to fulfill its obligations under the Agreement and breach the same.

45. As a direct and proximate cause thereof, Plaintiffs have suffered loss for which they must be compensated.

46. Such tortious interference was willful and wanton with specific intent to harm Plaintiffs' financial interests and warrants imposing punitive damages.

WHEREFORE, Plaintiffs pray the Court to ENTER JUDGMENT in their favor and against Defendant Emerson Dimmick for damages sufficient to compensate Plaintiffs for losses incurred because of such defendant's tortious interference with his Agreement with Partners Insurance, punitive damages, plus costs of suit and whatever other relief as is just and equitable.

### Count III
### Unjust Enrichment
### (Against Defendant Karen Dimmick)

47. The assertions of the foregoing paragraphs are incorporated by reference.

48. Because of her ownership interest in Partners Insurance, Karen Dimmick has been unjustly enriched by Partners Insurance's failure to make payment to Plaintiffs as required.

49. Karen Dimmick must make restitution to Plaintiffs for such benefit as she has unjustly received because of Defendant Partners' Insurance's bad faith failure to comply with the terms of parties' Agreement.

WHEREFORE, Plaintiffs pray the Court to ENTER JUDGMENT in their favor and against Defendant Karen Dimmick for restitutionary damages for the benefit to which she was unjustly enriched by the failure of Partners Insurance to make payment to Plaintiffs under the Agreement, plus costs of suit and whatever other relief as is just and equitable.

## Count IV
## Breach of Contract
## (Against Defendant Emerson Dimmick)

50. The assertions of the foregoing paragraphs are incorporated by reference.

51. The succeeding paragraphs are pleaded in the alternative to Count I if the Court should apply the Agreement as written to render Plaintiffs and Individual Defendants as sellers jointly entitled to the total $1,150,000 benefit to be paid by Partners Insurance under the Agreement.

52. The Agreement says that "Stanly Insurance Services, a North Carolina limited liability company, will be referred to as 'Sellers.'"

53. If the Court applies the Agreement as literally written, SIS is Sellers.

54. If SIS means Sellers, then any proceeds from the Agreement were property of SIS, a North Carolina LLC.

55. SIS had no operating agreement.

56. SIS's managers, members, or both had authority to decide how to distribute the Agreement's proceeds.

57. SIS's managers, members, or both decided how to distribute the Agreement's proceeds.

58. The actions of SIS's managers and members are the best evidence of SIS's decision on how to distribute the Agreement's proceeds: SIS distributed no proceeds to Defendant Emerson Dimmick. Instead, Defendant Emerson Dimmick paid Plaintiff Scott E. Dimmick $10,000 monthly for 21 consecutive months and paid premiums on Plaintiff Scott E. Dimmick's life insurance policy.

WHEREFORE, Plaintiffs pray the Court to ENTER JUDGMENT in their favor and against Defendant Emerson Dimmick for damages sufficient to compensate Plaintiffs for losses incurred because of such defendant's breach of contract, plus costs of suit and whatever other relief as is just and equitable.

## Count V
## Reformation of Contract

59. The assertions of the foregoing paragraphs are incorporated by reference.

60. If the Court should determine that the Agreement as written mistakenly includes Defendants Emerson Dimmick and Karen Dimmick as payees or co-payees of any sums to be paid under the Agreement, the Court should reform the Agreement to reflect the Parties' intent that only Plaintiffs are such payees.

61. The Court can reform the Agreement where due to, among other things, "the mistake of the draftsman," it "does not express the true intentions of the parties." *Wells Fargo Bank, N.A. v. Coleman*, 239 N.C. App. 239, 248, 768 S.E.2d 604, 611 (2015).

62. Plaintiffs assert that if the Agreement does not facially or through use of extrinsic evidence establish Plaintiffs' sole entitlement to the monthly payments thereunder, such is because of a mistake of the draftsman or mutual mistake of fact as to what the parties were signing, and the Agreement does not express the Parties' true intentions related to its definition of Sellers or at least is ambiguous.

63. In a now dismissed counterclaim made by Individual Defendants in this case, Individual Defendants Emerson Dimmick and Karen Dimmick asserted that Plaintiffs had converted property belonging to them in the form of payments from Defendant Partners Insurance.

64. For such a claim to succeed, even in the alternative, Individual Defendants would have had to be both Sellers *and* identical to the buyer – Defendant Partners Insurance – in the Agreement.

65. If this were not so, Plaintiffs could not have converted any property belonging to Defendants Emerson Dimmick and Karen Dimmick, because payments were made by Defendant Partners Insurance.

66. The Agreement's references to Plaintiffs Scott Dimmick and Jodie Dimmick as Sellers alleged above, with no similar references to Defendants Emerson Dimmick and Karen Dimmick as Sellers, reflect the Parties' intent not to treat Defendants Emerson Dimmick and Karen Dimmick as Sellers.

67. Further, the Agreement contains representations of Plaintiffs as individuals, asserting,

> Scott & Jodie Dimmick has [sic] the requisite power and authority to enter into this Agreement. The execution, delivery and performance of this Agreement, and the consummation of the transactions provided for in this Agreement, have been duly and validly approved by all necessary action on the part of SIS. This Agreement is the valid and binding obligation of SIS and enforceable against each of them in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium and similar laws of creditors, and subject to the effect of general principles of equity, whether applied by a court of law or equity.

Exhibit A, p. 4, § 5(B)(iii).

68. Defendant Partners' Insurance Agency's exclusive payments to Plaintiffs Scott Dimmick and Jodie Dimmick for the full monthly amount payable under the Agreement reflect the Parties' intent not to treat Defendants Emerson Dimmick and Karen Dimmick as Sellers under the Agreement.

69. The receipt of funds solely by Plaintiffs Scott Dimmick and Jodie Dimmick for twenty-one consecutive months with no request for funds by Defendants Emerson Dimmick and Karen Dimmick reflects the Parties' intent not to treat Defendants Emerson Dimmick and Karen Dimmick as Sellers.

WHEREFORE, Plaintiffs pray the Court to ENTER JUDGMENT and GRANT RELIEF reforming the Agreement to correct a draftsmen's error and reflect the Parties' intent that Defendants Emerson Dimmick and Jodie Dimmick are not Sellers under the Agreement and that payments under the Agreement are the sole and exclusive property of Plaintiffs Scott Dimmick and Jodie Dimmick.

Respectfully submitted,

**METTE, EVANS & WOODSIDE**

By: /s/ Aaron D. Martin
_____
Aaron D. Martin
Pa. Atty. I.D. No. 76441
3401 North Front Street
Harrisburg, PA 17110
(717) 232-5000
admartin@mette.com

Respectfully submitted,

**STAM LAW FIRM, PLLC**

By: /s/ Dan Gibson
_____
Dan Gibson
510 West Williams Street
Apex, NC 27502
(919) 362-8873
dan@stamlawfirm.com

Date: October 6, 2022