# EXHIBIT A



## ACCOUNT PURCHASE AGREEMENT

THIS ACCOUNT PURCHASE AGREEMENT (The "Agreement") is made as of the **1st day of January, 2018** by and among; **Scott E. Dimmick & Jodie C. Dimmick**, individuals residing in York County, Pennsylvania, **Emerson L. Dimmick & Karen A. Dimmick**, individuals residing in Mecklenburg County, North Carolina. **("SIS") Stanly Insurance Services**, a North Carolina limited liability company, will be referred to as "Sellers", and when used as "SIS" throughout this document, it is referencing all parties affiliated with. **("PIA") Partners Insurance Agency**, a North Carolina corporation will be referred to as "Buyer".

WHEREAS, Sellers desire to sell, and buyer desires to purchase, certain insurance accounts, customer information, real estate, and office equipment and all rights and renewals related thereto ("collectively referred to herein as "Property");

NOW, THEREFORE, in consideration of the foregoing and of the mutual promises and covenants and the other consideration described in this agreement, the parties agree as follows:

1. **CERTAIN DEFINITIONS.** For purposes of this Agreement, the following terms shall have the following meanings:

    a. "Accounts" shall mean; Direct Transfer Accounts: All customer accounts, and all expirations thereof, representing insurance policies in effect as of the date of this Agreement.

    b. "Customers shall mean; all information related to customers listed in section "1(a)" above.

17505 W Catawba Ave. Suite 250 Cornelius, NC 28031 Phone 704.8969865 Fax 704.655.9784
www.partnersinsuranceagency.com

c. "Customer Information" shall mean; the list of customers, their contact information, information regarding insurance coverages for Customers, and any other information maintained by Murray and/or MIM with respect to the Customers.

d. "Real Estate" shall mean; the property address listed below; and at those property addresses, to include and comprise of; the land, the buildings on it, and any other "real property" associated at the following addresses:

   i. 108 West Catawba Ave., Mount Holly, North Carolina, 28120
   ii. 320 North Second Street, Albemarle, North Carolina, 28001

e. "Office Equipment" shall mean; any asset such as furnishings, computers, or equipment essential to the everyday operations of the company, at the previously disclosed locations in section "1.(d)" above.

## 2. PURCHASE PRICE.

a. Buyer shall pay to Sellers an amount equal to One Million One Hundred Five Thousand Three Hundred Seventy Two Dollars ($1,105,372). Seven Hundred Twenty Thousand Dollars ($720,000) shall be paid over a Six (6) year period or $10,000 per month starting on or before July, 1st 2018 for 72 consecutive months.

b. In addition to the above mentioned, the Buyer agrees to pay for a Life Insurance Policy owned by Scott E. Dimmick. Policy Number: U558044, pre determined payments in the amount of $5352.39 per QUARTER for the Remaining 18 YEARS totaling an amount of ($385,372.08), payments to begin in March of 2018.

## 3. TRANSFER OF ACCOUNTS.

a. Transfer. By execution of this Agreement each Seller hereby agrees to sell, assign and transfer to Buyer, and Buyer agrees to purchase from each Seller, on the terms set forth herein, all of such Sellers' right, title and interest in and to:

   i. The Accounts;

   ii. All rights and protections of Stanly Insurance Services with respect to the Customers and;

   iii. All Customer Information, including all books, records, files, correspondence and work in progress as of the Closing Date pertaining to the Accounts, whether on paper or electronic format or both.

b. Post-Closing Rights and Obligations: Buyer shall have sole responsibility for servicing of the Accounts, Real Estate Referenced in "1.(d)" above, any and all obligations previously made to Robert D. Black, and Robert D. Black Insurance Services, and after Closing Date, and neither Seller shall have any obligations with respect to the Accounts after the Closing Date except as otherwise expressly provided herein.

c. No Assumption of Liabilities; Seller shall assume no liabilities or payables of Stanly Insurance Services relating to the Accounts, Real Estate Referenced in "1.(d)" above, any and all obligations previously made to Robert D. Black, and Robert D. Black Insurance Services, except as otherwise expressly provided herein.

4. CLOSING.

The closing of the transaction contemplated herein (the "Closing") shall be held on or before Sunday, December 31, 2018 (the "Closing Date").

5. REPRESENTATIONS AND WARRANTIES.

   a. Buyer's Representations. Buyer represents and warrants to Sellers as follows:

      i. Buyer has the requisite corporate power and authority to enter into this agreement and to carry out the transactions provided for in this Agreement, have been duly and validly approved by all necessary action on the part of Buyer; and this Agreement is the valid and binding obligation of Buyer and is enforceable against Buyer in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium and similar laws of creditors, and subject to the effect of general principles of equity, whether applied by a court of law or equity.

      ii. Neither the execution and delivery of this Agreement, nor the consummation of the transactions described in this Agreement, nor compliance by Buyer with any of the provisions hereof, will conflict with or result in a breach of the terms or conditions of the Articles of Incorporation or Bylaws of Buyer or any agreement to which Buyer is a party.

      iii. The negotiations relating to this Agreement, and consummation of the transactions described in the Agreement, will not give rise to any claims against any party to this Agreement for a finder's fee, brokerage commission or like payment as a result of any agreement, understanding or action by Buyer.

   b. Seller's Representations. Sellers, jointly and severally, represent and warrant Buyer as follows:

i. There is no suit, action, or dispute of any nature which exists or is pending, or, to the knowledge of any Seller, is contemplated or threatened, in which Stanly Insurance Services is engaged or involved or to which is or would be party, and which relates to or involves in any way any Account or any insurance policies or coverages in connection with any Account.

ii. The negotiations relating to this Agreement, and consummation of the transaction described in this Agreement, will not give rise to any claims against any party to this Agreement for a finder's fee, brokerage commission or like payment as a result of any agreement, understanding or action by Stanly Insurance Services.

iii. Scott & Jodie Dimmick has the requisite power and authority to enter into this Agreement. The execution, delivery and performance of this Agreement, and the consummation of the transactions provided for in this Agreement, have been duly and validly approved by all necessary action on the part of SIS. This Agreement is the valid and binding obligation of SIS and enforceable against each of them in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium and similar laws of creditors, and subject to the effect of general principles of equity, whether applied by a court of law or equity.

iv. Neither the execution and delivery of this Agreement, nor the consummation of the transactions described in this Agreement, nor compliance by SIS with any of the provision hereof, will conflict with or result in a breach of any agreements to which all members of SIS, is a party.

c. All the representations and warranties of the parties shall survive the Closing Date and consummation of transactions described in the Agreement.

## 6. NON-COMPETION AND NON-SOLICITATION: CONFIDENTIALITY.

So long as Buyer is not in default of any obligation set forth in this Account Purchase Agreement or obligations delivered at Closing, before or after the Closing:

a. Scott & Jodie Dimmick, jointly and severally, hereby covenant and agree that for a period of three (3) years following the Closing Date neither Scott E. Dimmick nor Jodie C. Dimmick will, directly or indirectly or through any employee, agent or contractor,

(A) solicit any insurance business for any Customer, or

(B) sell, bind, renew or place any insurance policy or coverage to or for any Customer or solicit any customer for such purpose, or

(C) solicit, sell, bind, renew or place any policies with respect to the Accounts. This only applies to Property and Casualty business. This covenant applies only within a Fifty (50) mile radius of Cornelius, NC.

b. Scott & Jodie Dimmick hereby acknowledge that the Customer Information being transferred to Buyer hereunder is highly confidential, and such confidentiality is critical to the benefit of this transaction to Buyer. Therefore, Scott & Jodie Dimmick, jointly and severally, hereby covenant and agree not to directly or indirectly or through any employee, agent or contractor,

    (A) use the Customer Information in any insurance business after the date of this Agreement, except as provided herein, or

    (B) disclose any aspect of the Customer Information to any party after the date of this Agreement.

c. The covenants of Sellers set forth in this Section shall survive the Closing of the transaction contemplated herein for a period of five (5) years.

## 7. INDEMNIFICATION.

a. Indemnity by Buyer. Buyer agrees to defend, indemnify and hold harmless Sellers and their officers, directors, employees and agents from and against any claim, cost, expense, liability, cause of action, obligation, loss or damage (including reasonable attorney's fees and expenses) which result from or arise out of any material inaccuracy or material breach of any representation, warranty, covenant or agreement of Buyer contained in or made pursuant to this Agreement.

b. Indemnity by Sellers. Each Seller agrees to defend, indemnify and hold harmless Buyer and its officers, directors, employees and agents from and against any claim, cost, expense, liability, cause of action, obligation, loss or damage (including reasonable attorney's fees and expenses) which result from or arise out of: (i) any material inaccuracy or material breach of any representation, warranty, covenant or agreement of each Seller contained in or made pursuant to this Agreement; (ii) any error or omission of either Seller or any of their respective officers, directors, employees, agents, producers or representatives, or any other person or entity under either Seller's control, in handling or servicing of any Account or Record prior to the Closing Date, or in connection with the sale, binding, renewal or placement of any policy that any Account represents; and (iii) any payable or similar liability relating to or arising on or before the Closing Date from any policy that any Account represents, including any and all return premiums on any such policy. Notwithstanding anything set forth in this Section 8 (b) to the contrary, after the first renewal or expiration of each Account defined in Section 1 (a) i and ii by Buyer or any of their respective officers, directors, employees, agents, producers or representatives, or any other person or entity under either Buyer's control, in handling or servicing of any Account or Customer Information after the Closing, or in connection with the sale, binding, renewal or placement of any policy that any account represents, the Sellers are released from any and all liability and the indemnity set forth herein. Buyer agrees to defend, indemnify and hold harmless Sellers from and against any claim, cost, expense, liability or cause of action, obligation, loss or damage (including reasonable attorneys' fees and expenses) which result from or arise out of such actions.

c. Notice. The indemnified party shall give the other party prompt written notice and a description of any event or other matter which may give rise to a claim against the indemnifying party for indemnification under this Section.

d. Survival. The indemnification obligations set forth herein shall survive the Closing of the transaction contemplated herein

## 8. OTHER PROVISIONS

a. Expenses. Each party shall pay its own expenses in connection with this Agreement.

b. Successors. The provisions of this Agreement shall be binding upon and inure to the benefit of the respective parties hereto, and their respective successors, assigns, heirs and personal representatives.

c. Governing Law. This Agreement shall be construed and enforced in accordance with the laws of the State of North Carolina, except for its conflict of law rules.

d. Severability. If any term of this Agreement shall be deemed invalid or unenforceable in whole or in part, the remainder of this Agreement and its application shall not be affected, and each term shall be valid and enforceable to the full extent permitted by law.

e. Entire Agreement. This is the sole agreement among Sellers and Buyer with respect to the transactions completed hereby. There are no other agreements, promises, representations, warranties, covenants or undertakings other than those expressly set forth or referred to in this Agreement. This Agreement shall not be altered, corrected, modified, amended, limited or waived in any respect or manner without the prior written consent of all parties. This Agreement supersedes all prior written or oral discussions and agreements between the parties with respect to the transactions contemplated hereby. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent or other breach of that provision or any breach of any other provision of this Agreement.

f. Counterparts. This Agreement may be executed in one or more counterparts, all of which taken together shall constitute one instrument



IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first above written.

BUYER:
Partners Insurance Agency, Inc.

By: *signature*
Emerson L. Dimmick

*signature*
Emerson L. Dimmick

*signature*
Karen A. Dimmick

SELLERS:

*signature*
Scott E. Dimmick

*signature*
Jodie C. Dimmick

Stanly Insurance Services

By: *signature*
Scott E. Dimmick

Title: Managing Partner

# EXHIBIT B

 Gmail

Jodie Dimmick <jodiedimmick@gmail.com>

# Hello
2 messages

---

**Jodie Dimmick** <jodiedimmick@gmail.com>  
To: chip@partnersinsuranceagency.com

Fri, Apr 17, 2020 at 11:38 AM

Hello Chip,

I hope you are doing well during this crazy time that we're all part of.

This is very hard for me to approach. I was having trouble accessing the PNC banking system a few days ago, apparently there was a problem with their system. In doing so I noticed that April's deposit had not been done. I'm thinking that there may have been trouble on your end as well. With that being said, I know last month that there was some texting, I'm hoping that this is not a result of that. Please know that those deposits are not intended for us, but rather Sarah and JR. I think both you and I feel sometimes as though we are the ones stuck in the middle. That's all I will say about this.

This part of the email is about me and no one else. Something has been pulling at me to make contact with you. Through all this insanity the past few years, you and I have never had a bad word between us. I would like to keep it that way. My hope is that if we come in contact with each other, be it 10 years or 20, that we can hug each other as we always did. I am using a different email address with the hope that this stays between you and me..only.

If you chose to respond or not respond, is totally up to you.
Thank you for taking the time to read this.

Jodie

---

**chip@partnersinsuranceagency.com** <chip@partnersinsuranceagency.com>  
To: Jodie Dimmick <jodiedimmick@gmail.com>

Fri, Apr 17, 2020 at 12:30 PM

Hello Jodie,
Great to hear from you. Yes these are crazy and uncertain times.
Last month two days before Emily's birthday, eleven days before Karen's 60th birthday and thirteen days before Emily's sixth anniversary of her death and a plate full of other usual bullshit Scott and Sarah decide it's the perfect time to accuse Tyler and Karen and threaten me with calling Erie's CEO because Sarah got a solicitation from a GEICO agent in Mechanicsburg. I told Scott I/we had nothing to do with this as we don't represent GEICO nor do we know where Sarah lives. Scott and Sarah then stated "we" we will see what you have to lose".
So in regards to the monthly payments and life insurance, I am not paying one cent until those two have the courage to apologize to all involved peronsally I have watched accusations, threats, criticism  etc, etc, etc ruin my side of the family. Now I guess it's my turn to be in the Dimmick Cess Pool Barrel. Well I am not taking it. I don't care if anyone ever speaks to me again.
After these apologizes are or not completed, we will then discuss a bigger problem. When we went our separate ways, the business was valued at $ 2,400,000 we owed Bobby $699,990 dollars. So the fair value was $1,700,000. Half is $850,000 not $1,150,000.
We were in a "partnership" that required all of us to have responsibilities to the business. I listened to accusations, threats, un realistic demands, complaints etc etc .
I hope you and everyone are well Jodie,
Chip