IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| Scott E. Dimmick and Jodie C. Dimmick, | : | |
| Plaintiffs, | : | |
| vs. | : | No. 3:21-cv-00459-FDW-DCK |
| Partners Insurance Agency, Inc., Emerson L. Dimmick, and Karen A. Dimmick, | : | |
| Defendants. | : | |

**Reply of Plaintiffs Scott E. Dimmick and Jodie C. Dimmick to New Matter and Answer to Counterclaims**

Plaintiffs/Counterclaim Defendants Scott E. Dimmick and Jodie C. Dimmick (collectively "Plaintiffs") by undersigned counsel file this reply to new matter and answer to counterclaims as follows,

### SECOND DEFENSE
### MOTION TO DISMISS[1]

Plaintiffs oppose the motion to dismiss as Plaintiffs' complaint properly states claims.

### THIRD DEFENSE
### AFFIRMATIVE DEFENSE

Plaintiffs deny that they have unclean hands.

---

[1] Defendants' pleading does not appear to contain a "first" defense.

## FOURTH DEFENSE
## AFFIRMATIVE DEFENSE

Denied. Plaintiffs have properly stated a claim for unjust enrichment in the alternative.

## FIFTH DEFENSE
## AFFIRMATIVE DEFENSE

Denied. Plaintiffs reiterate that Individual Defendants have interfered with contractual relations as stated in the amended complaint.

## SIXTH DEFENSE
## AFFIRMATIVE DEFENSE

Denied. Plaintiffs deny the defense of excuse of performance by material breach. To the contrary, Plaintiffs did not materially breach their contractual obligations.

## SEVENTH DEFENSE
## AFFIRMATIVE DEFENSE

Denied. Defendants have breached their contractual and other legal obligations as stated in the amended complaint.

## EIGHTH DEFENSE
## AFFIRMATIVE DEFENSE

Denied. Defendants are not entitled to any offset.

## NINTH DEFENSE
## AFFIRMATIVE DEFENSE

No response required. This is a statement of defendants' intention to raise defenses in the future that are not presently identified.

## TENTH DEFENSE
## AFFIRMATIVE DEFENSE

Denied. Defendants are not entitled to judgment on the pleadings.

## ANSWER TO COUNTERCLAIMS OF DEFENDANT EMERSON DIMMICK AGAINST PLAINTIFF SCOTT DIMMICK

1. No response required. Plaintiffs incorporate by reference the allegations of their amended complaint and reply to affirmative defenses.

2. Admitted.

3. Admitted.

4. Denied as stated. The parties agreed that all home equity funds or other funds contributed by Scott or Emerson and utilized to purchase the original book of business would be reimbursed as a priority payment. Scott did not make demand as alleged.

5. Denied as stated. The debt owed to Scott for use of home equity was reimbursed first, but this was because Emerson could not secure his own funding to purchase the business.

6. Denied as stated. Scott never desired nor demanded a Porsche. Emerson negotiated the purchase of a Porsche for use for SIS business, suggesting

that the car be kept in Scott's garage. Emerson, however, was free to use the vehicle whenever he would choose, especially when visiting Pennsylvania to meet Patty Elgin. Emerson would also on occasion take the Porsche to North Carolina for his use. The Porsche was for business use, and all expenses were paid from SIS revenue.

7. Denied as stated. SIS did not purchase a Porsche for Scott. SIS, as directed by Emerson, decided to purchase the Porsche as a company vehicle. Later, the Porsche was transferred to Scott as part of an agreement between Emerson and Scott.

8. Denied as stated. Scott never proposed purchasing a luxury vehicle for Emerson.

9. Denied as stated. The agreement was for SIS profits to be used to pay debt and expenses and then to be split 50-50. Emerson and Scott had equal use of the company vehicle, and profits were to be split 50-50.

10. Denied as stated. Emerson and Scott shared equally in any profits and had equal use of the Porsche. Scott agreed to payment of debt, expenses and splitting of profits 50-50. No demands were made of Emerson, and Emerson was always able to use the Porsche purchased by the business.

11. Denied as stated. As agreed by Scott and Emerson, Scott and Jodie Dimmick provided home equity funds on two occasions to purchase two books of

business for SIS. Jodie, as agreed, handled bookkeeping for SIS. Emerson on numerous occasions stated that he was glad to have Scott as a business partner, as Scott did not need to take money out of the business to survive.

12. Denied as stated. Despite Jodie Dimmick's work, after expenses, profits were distributed 50-50 as agreed upon by the parties.

13. Denied as stated. In 2016 Emerson demanded to be compensated for running the day-to-day business of SIS, in derogation of the original agreement. Scott agreed to a separate payment of $200,000 for two years ($400,000 total) to Emerson for personal services, after which remaining profit was again to be split 50-50 between the parties.

14. Denied. There was no separate agreement. In fact, it was the opposite, as there was no deviation from the 50-50 except for the $400,000 Scott agreed as payment to Emerson for his services.

15. It is admitted that $200,000 was paid each of two years, but that was the extent to which Scott had agreed such compensation would be paid outside the parties' 50-50 profit sharing agreement. There was no separate compensation agreement apart from this extraordinary payment.

16. Denied as stated with respect to any suggestion that there was a separate compensation agreement other than the one-time provision for payment of $400,000 to Emerson for two years of service as stated herein.

17. Denied as stated. The parties' agreement as to the splitting of profits 50-50 with only a $400,000 deviation of payment of funds to Emerson was the parties' agreement. There was no separate compensation agreement beyond the extraordinary allowance of the $400,000 in payments.

18. Defendants are not entitled to payment as sellers under the agreement of sale. It was the understanding and agreement of the parties at all times for full payment to be made to Plaintiffs, and the course of payments actually made for over a year to Scott and Jodie demonstrates this reality.

19. Denied as a characterization of a writing which speaks for itself. As stated in the amended complaint, Plaintiffs are owed $510,000 and the balance of payments due on Scott's life insurance policy in addition to other relief.

## COUNTERCLAIM COUNT ONE
## BREACH OF CONTRACT
**(Compensation Agreement)**

20. Plaintiffs reallege their averments in the amended complaint and in the present pleading.

21. Denied as stated. The only agreement between the parties for separate compensation was for the $400,000 paid to Emerson based upon a deviation from the 50-50 profit-sharing agreement expressly agreed to by Scott to compensate Emerson at the rate of $200,000 for two years.

22. It is admitted only that Emerson was paid $200,000 for each of the two years that Scott had agreed to. Any other implication of this paragraph that Emerson is entitled to additional payments in derogation of the parties' profit-sharing agreement is denied.

23. It is denied that Scott has failed to fulfill any contractual obligation to Emerson or other defendants, including what Emerson incorrectly characterizes as a "Compensation Agreement." The actual terms of Scott's agreement for extraordinary payment of a total of $400,000 to Emerson for services separate from the 50-50 profit-sharing agreement are stated herein.

24. It is denied that Scott has failed to fulfill any contractual obligation to Emerson or other defendants, including what Emerson is incorrectly characterizing as a "Compensation Agreement." The actual terms of Scott's agreement for extraordinary payment of a total of $400,000 to Emerson for services separate from the brothers' 50-50 profit-sharing agreement are stated herein.

25. Denied. There was no agreement for payment of an additional $300,000, and it is denied that Scott has materially breached any contractual obligation to Emerson.

26. Denied. There was no agreement for payment of an additional $300,000, and it is denied that Scott has materially breached any contractual obligation to Emerson.

27. Denied. There was no agreement for payment of an additional $400,000, and it is denied that Scott has materially breached any contractual obligation to Emerson. (It is also noted that this claimed sum due in paragraph 27 differs from the $300,000 asserted in paragraph 25.)

## COUNTERCLAIM COUNT TWO
## BREACH OF CONTRACT
**(Profit Agreement)**

28. Plaintiffs reallege their averments in the amended complaint and in the present pleading.

29. It is admitted that there was a contractual agreement between the parties. It is denied that Scott has breached any agreement of the parties. By way of further answer, Scott incorporates by reference all allegations stated in the amended complaint asserting that Emerson and/or other defendants have violated their contractual agreements in favor of Plaintiffs.

30. It is admitted that there was a contractual agreement between the parties. It is denied that Scott has breached any agreement of the parties. By way of further answer, Scott incorporates by reference all allegations stated in the amended complaint asserting that Emerson and/or other defendants have violated their contractual agreements in favor of Plaintiffs.

31. It is denied that Scott has breached any agreement of the parties.

32. It is denied that Scott has breached any agreement of the parties.

33. It is denied that Scott has breached any agreement of the parties, specifically as to improper retention of any profits to which Emerson makes claim, repayment of capital contributions, or transfer of the Porsche, which was a part of separate dealings between Scott and Emerson not in derogation of the terms of their 50-50 profit-sharing agreement.

34. Denied as stated. This allegation is in the nature of an affirmative defense which is denied. It is further denied that Scott has breached any agreement of the parties.

35. It is denied that Scott has breached any agreement of the parties, and it is denied that Emerson is entitled to any damages.

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs raise the affirmative defense of the statute of limitations as to all counterclaims.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs raise the defense of the parole evidence rule.

WHEREFORE, Plaintiffs pray the Court to enter judgment in their favor on their principal claims and against any and all defendants on the asserted counterclaims.

|  |  |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| **STAM LAW FIRM** | **METTE, EVANS & WOODSIDE** |
| By: /s/ R. Daniel Gibson<br>R. Daniel Gibson<br>N.C. State Bar No. 49222<br>510 W. Williams Street<br>Apex, NC 27502<br>(919) 362-8873 (phone)<br>(919) 387-7329 (fax)<br>dan@stamlawfirm.com<br><br>*Attorneys for Plaintiffs* | By: /s/ Aaron D. Martin<br>Aaron D. Martin<br>PA Atty. I.D. No. 76441<br>3401 North Front Street<br>Harrisburg, PA 17110<br>(717) 232-5000 (phone)<br>(717) 236-1816 (fax)<br>admartin@mette.com<br><br>*Attorneys for Plaintiffs*<br>*Pro Hac Vice* |

Date: December 21, 2022.