IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| Scott E. Dimmick and Jodie C. Dimmick, | : | |
| Plaintiffs, | : | |
| vs. | : | No. 3:21-cv-00459-FDW-DCK |
| Partners Insurance Agency, Inc., Emerson L. Dimmick, and Karen A. Dimmick, | : | |
| Defendants. | : | |

**Brief in Support of the Motion of Plaintiffs/Counterclaim Defendants Scott E. Dimmick and Jodie C. Dimmick for Judgment on the Pleadings as to All Counterclaims Pursuant to Federal Rule of Civil Procedure 12(c)**

Plaintiffs/Counterclaim Defendants Scott E. Dimmick and Jodie C. Dimmick by undersigned counsel file this brief in support of their motion for judgment on the pleadings on the counterclaims stated by Defendant/Counterclaim Plaintiff Emerson L. Dimmick.

**I. Factual Background**

Plaintiffs/Counterclaim Defendants Scott E. Dimmick ("Scott") and Jodie C. Dimmick ("Jodie") (collectively "Plaintiffs") have sued Defendants/Counterclaim Plaintiffs Emerson L. Dimmick ("Emerson"),

Karen A. Dimmick ("Karen") and Defendant Partners Insurance Agency, Inc., for breach of contract and related claims arising out of Emerson and Karen's failure to make payments under a certain agreement dated January 1, 2018, for the sale of a business known as Stanly Insurance Services ("SIS") ("Agreement").  See ECF Doc. 45-1, pp. 1-8.

Emerson has asserted two counterclaims against Scott, both for breach of alleged oral contracts pertaining to SIS that are nowhere mentioned in the Agreement and the existence of which is refuted by the written Agreement's integration clause.  Compare ECF Doc. #48, pp. 11-12 (alleging oral, antecedent agreements) and Doc. 45-1, p. 7 (Agreement's integration clause).

Emerson's first counterclaim ("Counterclaim I") asserts breach of an alleged oral "Compensation Agreement" under which Emerson claims Scott failed to make payment to him for services rendered to SIS prior to Scott's sale of his interest in SIS on January 1, 2018.  ECF Doc. #48, p. 11.  The second counterclaim ("Counterclaim II") asserts breach of an alleged oral "Profit Agreement" under which Emerson also claims Scott failed to make payment to him for profits realized by SIS, also

2

predating the parties' written Agreement. *Id.* at pp. 11-12. Neither alleged oral agreement is referenced in the parties' written agreement. See generally Doc. 45-1, pp. 1-8.

Scott and Jodie have asserted the statute of limitations and Parol Evidence Rule as affirmative defenses and now seek judgment on the pleadings on Counterclaims I and II for Defendants' failure to state claims as a matter of law. See ECF Doc. #49, p. 9.

## II. Questions Presented

1. Whether Emerson Dimmick's claims under the alleged oral "Compensation Agreement" and "Profit Agreement" are barred by North Carolina's statute of limitations for unpaid wages or breach of contract.

2. Whether Emerson Dimmick's claims under the alleged oral "Compensation Agreement" and "Profit Agreement" are barred by the Parol Evidence Rule and the Agreement's integration clause.

## III. Legal Argument

### A. North Carolina's statutes of limitations bar Defendants' Counterclaims I and II.

North Carolina's statute of limitations for a claim of unpaid wages is two years. See N.C.G.S. § 95-25.22(f). The statute of limitations for a claim of breach of contract is three years. See N.C.G.S. § 1-52(1).

3

Emerson has asserted that both the "Compensation Agreement" and "Profit Agreement" predated the Agreement signed by the parties on January 1, 2018. See ECF Doc. #45-1, p. 2.

> The conduct of the Parties in the performance of the Agreement and the operation of [Stanly Insurance Services] makes clear there were understandings and agreements *that were not incorporated into the written Agreement* and are enforceable among the Parties *including, without limitation, the Profit Agreement and the Compensation Agreement.*

See ECF Doc. #48, p. 10, ¶ 17 (italics added).

Counterclaims do not relate back to the date a plaintiff's action was filed. See *Upchurch v. Harp Builders, Inc.*, 2022-NCCOA-301, ¶ 9, 872 S.E.2d 176, 178 (N.C. App. 2022); *Pharmaresearch Corp. v. Mash*, 594 S.E.2d 148, 152 (N.C. App. 2004). Where the facts are admitted or established, the question of whether a claim is barred by the statute of limitations "becomes one of law for the court." *Id.* (citing *Pembee Mfg. Corp. v. Cape Fear Constr. Co., Inc.,* 69 N.C. App. 505, 317 S.E.2d 41 (1984), *aff'd* 313 N.C. 488, 329 S.E.2d 350 (1985)).

A party asserting a claim bears the burden of rebutting a limitations defense once asserted. See *Georgia-Pac. Corp. v. Bondurant*, 344 S.E.2d 302, 304 (N.C. App. 1986); see also *Lea Co. v. N.C. Bd. of Transp.,* 308 N.C. 603, 304 S.E.2d 164 (1983) ("North Carolina,

4

apparently alone among American jurisdictions, continues to adhere to the rule that once the statute of limitations has been properly pleaded in defense the burden of proof shifts to the plaintiff to show that the action was filed within the statutory period.") (further citations omitted).

Emerson's counterclaims on their face reveal their untimely assertion. Emerson first filed claims on the alleged oral arguments – both the Compensation Agreement and Profit Agreement – on December 2, 2021, more than three years after the January 1, 2018, date of the parties' Agreement. See ECF Doc. #30. Any claim Emerson desired to make under any alleged antecedent oral agreement must have been made, at a minimum, within three years of January 1, 2018, irrespective of the date of the filing of the present action by Plaintiffs.

> **1. North Carolina's statutes of limitations for claims for unpaid wages and for breach of contract bar Emerson's claim under the so-called "Compensation Agreement."**

Emerson has characterized the alleged, oral "Compensation Agreement" as follows,

> 12. Despite Defendant Emerson's work, SIS did not pay Defendants Emerson *a salary or any form of compensation*

5

> from 2006 to 2016, meanwhile Plaintiff Scott retained all the profits from SIS.
>
> 13. In 2016, Plaintiff Scott agreed to pay Defendant Emerson $600,000.00 *to compensate him for his continued work* for SIS ("Compensation Agreement").
>
> 14. The Compensation Agreement was a separate and distinct agreement from the Profit Agreement *and was meant to compensate Defendant Emerson for the value of his work as an employee of SIS.*

ECF Doc. #48, pp. 9-10, ¶¶ 12-14 (italics added).

North Carolina's Wage and Hour Act defines in relevant part any "wage" subject to its provisions as "compensation for labor or services rendered by an employee whether determined on a time, task, piece, job, day, commission, or other basis of calculation, and the reasonable cost as determined by the Commissioner of furnishing employees with board, lodging, or other facilities[.]" N.C. Gen. Stat. Ann. § 95-25.2. The statute extends to "sick pay, vacation pay, severance pay, commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments." *Id.*

As noted *supra*, North Carolina's statute of limitations for claims of unpaid wages is two years. See N.C.G.S. § 95-25.22(f). The limitations period on an action for unpaid wages begins to run when the

promise is broken. *Hamilton v. Memorex Telex Corp.,* 454 S.E.2d 278, 282 (N.C. App. 1995), *disc. review denied,* 456 S.E.2d 830, 831 (N.C. 1995).

Emerson admits that Scott made payments to him of $100,000 under the alleged oral so-called "Compensation Agreement" in both 2016 and 2017 but asserts that Scott "failed or refused to make timely payment thereafter." ECF Doc. 48, p. 10, ¶ 15. Regardless of the six-figure sum to which Emerson now asserts entitlement,[1] Emerson did not file any claim against Scott for breach of the alleged "Compensation Agreement" until December 2, 2021. See ECF Doc. #30.

It is not disputed between the parties that Plaintiffs sold any interest in SIS under the Agreement as of January 1, 2018. See Doc. 45-1, p. 2. Accordingly, even accepting as true everything Emerson alleges, it is inherently implausible that there could have been more "compensation" due from Scott to Emerson following January 1, 2018, when the business came under Emerson's control. If such an agreement

---

[1] Emerson irreconcilably asserts in Counterclaim I that he is due both $300,000 and $400,000. Compare ECF Doc. #48, p. 11, ¶ 25 (asserting Scott failed or refused "to pay the remaining $300,000 owed to Defendant Emerson") and *ad damnum* clause, *id.* (demanding "damages in the amount of $400,000.00").

7

would persist post-closing separate from the Agreement itself, Scott would in effect be paying compensation to Emerson *for services Emerson would be rendering to his own company* in which Scott had no ongoing interest.

Even if deemed a claim for breach of contract generally as opposed to a claim for unpaid wages within the scope of North Carolina's Wage and Hour Act, Emerson's claim for alleged non-payment under the alleged oral "Compensation Agreement" is still time-barred. N.C.G.S. § 1-52(1). Emerson did not assert any claim for failure to pay "compensation" until December 2, 2021, more than three years (and almost four years) after the last date on which he could have expected payment, i.e., January 1, 2018, the date when Scott yielded ownership and involvement in the business.

WHEREFORE, Plaintiffs/Counterclaim Defendants Scott and Jodie Dimmick pray the Court to DISMISS WITH PREJUDICE Emerson's Counterclaim Count I – alleging breach of the so-called oral "Compensation Agreement" – as time-barred.

### 2. North Carolina's statute of limitations for actions on a contract bar Emerson's claim under the so-called "Profit Agreement."

North Carolina law requires that a party affirmatively establish the timeliness of his claim when the statute of limitations is raised as a defense. *Georgia-Pac. Corp., supra*, 344 S.E.2d at 304. Emerson does not state anywhere in his counterclaim when Scott promised to pay him under the so-called "Profit Agreement."

It is, however, clear from Emerson's pleading that he asserts that the alleged so-called "Profit Agreement" had been entered into sometime *prior* to execution of the Agreement. ECF Doc. #48, p. 10, ¶ 17 (referring to "understandings and agreements that were not incorporated into the written Agreement … *including, without limitation, the Profit Agreement and the Compensation Agreement*") (italics added).

Moreover, Emerson asserts that as of the execution of the Agreement, the time for Scott's alleged duty to perform under the agreement had passed. See, e.g., ECF Doc. 48, ¶ 31 ("The time had come for Plaintiff Scott to perform under the Profit Agreement and there were no conditions precedent to his performance and/or any such conditions had been met.").

9

Even if an unwritten promise to pay could restart the statute of limitations, Emerson does not allege any unwritten promise to pay or even a demand by Emerson for payment. Indeed, there is no allegation of any promise to pay by Scott having been made between January 1, 2018 and December 2, 2021. Emerson's assertion of a claim of breach of contract under the alleged "Profit Agreement" is accordingly time-barred. Emerson did not state such claim until filing his answer with counterclaims on December 2, 2021—more than three years after Scott sold his interest in SIS and could have been required to perform under an alleged, oral so-called "Profit Agreement." ECF Doc. #30.

WHEREFORE, Plaintiffs/Counterclaim Defendants Scott and Jodie Dimmick pray the Court to DISMISS WITH PREJUDICE Emerson's Counterclaim Count II – alleging breach of the so-called oral "Profit Agreement" – as time-barred by North Carolina's statute of limitations.

### B. The Parol Evidence Rule and the Agreement's integration clause bar Emerson's Counterclaims I and II.

Emerson asserts that both the "Compensation Agreement" and "Profit Agreement" predated the execution of the Agreement, i.e., they

10

were entered into prior to January 1, 2018. See ECF Doc. #48, p. 10, ¶ 17. Yet Emerson directly refuted the existence of the "Compensation Agreement" and "Profit Agreement" when signing the Agreement in 2018. As Emerson represented in the Agreement,

> Entire Agreement. This is the sole agreement among Sellers and Buyer with respect to the transactions completed hereby. There are no other agreements, promises, representations, warranties, covenants or undertakings other than those expressly set forth or referred to in this Agreement.[]

Doc. 45-1, p. 7.

In the face of Emerson's clear representation that no other agreements existed between the parties concerning Stanly Insurance Services, Emerson's allegation of separate yet unreferenced agreements in the nature of an oral "Compensation Agreement" and oral "Profit Agreement" is spurious.

Emerson nevertheless, without substantiation, alleges the following,

> The conduct of the Parties in the performance of the Agreement and the operation of [Stanly Insurance Services] makes clear there were understandings and agreements that were not incorporated into the written Agreement and are enforceable among the Parties including, without limitation, the Profit Agreement and the Compensation Agreement.

ECF Doc. #48, p. 10, ¶ 17.

Emerson states nowhere in his pleading how "conduct of the Parties in the performance of the Agreement… makes clear" the existence of other agreements between the parties. See generally ECF Doc. #48. Further, Emerson alleges no fraud, mistake, mental incapacity or other exception to the Parol Evidence in the Parties' dealings. See *id.*

Emerson's Counterclaims I and II run directly contrary to the Agreement's integration clause and violate the Parol Evidence Rule.[2]

---

[2] Plaintiffs have themselves sought reformation of the Agreement as a form of alternative relief. See ECF Doc. #45, pp. 12-15, ¶¶ 59-69. However, such prayer pertains only to the proper identification of the payees *under the Agreement itself* and not to the existence of any other agreement. Further, Plaintiffs have pointed specifically to the Parties' post-settlement course of dealings, which includes twenty-one months of uninterrupted conduct by Defendants consistent with Plaintiffs' assertion of the nature of the Agreement as obscured by draftsman's error. See *id.* at pp. 4-5, ¶¶ 18-19. Plaintiffs have also expressly invoked mistake as the basis for reformation. *Id.* at p. 13, ¶ 62.

Defendants have made no similar allegation in the face of the Agreement's integration clause in alleging the existence of the two oral agreements whose existence is facially contradicted by the Agreement's integration clause. Rather, without alleging fraud, mistake, mental capacity or other exception to the Parol Evidence Rule, and without explanation, Defendants merely allege that the Agreement "does not contain the 'Entire Agreement' of Parties as appears in Paragraph 8.3. of the same (sic)." ECF Doc. 48, p. 10, ¶ 16.

12

## 1. The Parol Evidence Rule and the Agreement's integration clause bar Emerson's claim for payment under the alleged so-called "Compensation Agreement."

It is undisputed that the date of the parties' Agreement was January 1, 2018. ECF Doc. 45-1, p. 2. The Agreement's integration clause excludes any agreement for compensation to Emerson that might continue after the date of execution. ECF Doc. 45-1, p. 7 ("There are no other agreements, promises, representations, warranties, covenants or undertakings other than those expressly set forth or referred to in this Agreement."). Emerson and Karen Dimmick have not asked the Court to reform the language of the Agreement.[3]

It defies credulity for Emerson to assert in the face of the Agreement's integration clause that he would be entitled to compensation from Scott *for services not yet rendered to the business being sold* as of the time that Scott sold his interest in the business, basing such claim on an alleged oral compensation agreement nowhere mentioned in the parties' Agreement and not otherwise corroborated in any way. *See* Section B(I), *infra.* Such would essentially be a right by

---

[3] *Cf.* footnote 2, *supra.*

13

Emerson to demand that Scott compensate him *for work Emerson would be rendering to Emerson's own business.* Such is an inherently implausible claim. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (pleading must contain "enough facts to state a claim to relief that is plausible on its face").

Accordingly, the Parol Evidence Rule bars Emerson's claim that any "Compensation Agreement" formed a part of the Agreement or now subsists in its own right.

WHEREFORE, Plaintiffs/Counterclaim Defendants Scott and Jodie Dimmick pray the Court to DISMISS WITH PREJUDICE Emerson's Counterclaim Count I – alleging breach of the so-called oral "Compensation Agreement" – as barred by the Parol Evidence Rule and the Agreement's integration clause.

### 2. The Parol Evidence Rule and the Agreement's integration clause bar Emerson's claim for payment under the alleged so-called "Profit Agreement."

The parties' business was sold as of January 1, 2018. ECF Doc. 45-1, p. 2. As noted *supra,* the Agreement expressly states, "There are no other agreements, promises, representations, warranties, covenants or undertakings other than those expressly set forth or referred to in

14

this Agreement." ECF Doc. 45-1, p. 7. The Agreement accordingly confirms that nothing such as the so-called "Profit Agreement" existed as would continue in force as of the time of the Agreement's execution. ECF Doc. 45-1, p. 2. Emerson and Karen Dimmick have not sought reformation of the Agreement.

The plain language of the Agreement defeats Emerson's claim for compensation under the alleged oral so-called "Profit Agreement." It defies common sense that an agreement for sale of a business interest with a value *in excess of one million dollars* would not have itself included an adjustment for profits unpaid as of the date of settlement or at least contained a clause providing for a post-closing adjustment.[4] See *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) ("A complaint must contain factual allegations sufficient to raise a right to relief above the speculative level.") (cleaned up) (citations omitted). In any event, Emerson did not even bother to voice such a claim of entitlement in this

---

[4] Plaintiffs note the inherent implausibility of Emerson's claim *in se*. Emerson does not even specify in his pleading the amount to which he claims entitlement under the "Profit Agreement," further highlighting the essential vacuity of the claim.

15

Court until almost four years had passed since the time of closing on the business's sale which, as noted in Section III(A)(2) *supra,* is a time-barred claim in any event.

WHEREFORE, Plaintiffs/Counterclaim Defendants Scott and Jodie Dimmick pray the Court to DISMISS WITH PREJUDICE Emerson's Counterclaim Count II – alleging breach of the so-called "Profit Agreement" – as barred by the Parol Evidence Rule and the Agreement's integration clause.

Respectfully submitted,

**METTE, EVANS & WOODSIDE**

By: /s/ Aaron D. Martin
_____
Aaron D. Martin (*pro hac vice*)
Pa. Atty. I.D. No. 76441
3401 North Front Street
Harrisburg, PA 17110
(717) 232-5000
admartin@mette.com

**STAM LAW FIRM**

By: /s/ Dan Gibson
_____
Dan Gibson
N.C. State Bar No. 49222
510 West Williams Street
Apex, NC 27502
(919) 362-8873
dan@stamlawfirm.com

*Attorneys for Plaintiffs/
Counterclaim Defendants,
Scott E. Dimmick and Jodie C.
Dimmick*

Date: February 23, 2023.

## Certification of Counsel

I certify under Federal Rule of Civil Procedure 11 that this brief contains 3,091 words as counted by Microsoft Word, which content is within the word limitation contained in the Court's Standing Order Governing Civil Case Management dated May 14, 2007, issued by the Honorable Frank D. Whitney, United States District Judge.

/s/ Aaron D. Martin
_____
Aaron D. Martin
*Attorney for Plaintiffs*