**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

Civil Action No.: 3:21-cv-00459-FDW-DCK

| | |
|---|---|
| SCOTT E. DIMMICK and<br>JODIE C. DIMMICK,<br>Plaintiffs,<br>vs.<br><br>PARTNERS INSURANCE AGENCY, INC., EMERSON L. DIMMICK and KAREN A. DIMMICK,<br>Defendants. | **BRIEF IN OPPOSITION TO THE MOTION OF PLAINTIFFS/ COUNTERCLAIM DEFENDANTS SCOTT E. DIMMICK AND JODIE C. DIMMICK FOR JUDGMENT ON THE PLEADINGS AS TO ALL COUNTERCLAIMS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(C)** |

NOW COME Defendants Emerson L. Dimmick and Karen E. Dimmick (collectively "Individual Defendants"), by and through undersigned counsel, and submit this Brief in Opposition to the Motion of Plaintiffs/Counterclaim Defendants Scott E. Dimmick and Jodie C. Dimmick for Judgment on the Pleadings as to All Counterclaims Pursuant to Federal Rule of Civil Procedure 12(c).

## I. BOTTOM LINE UP FRONT

The applicable statute of limitations for Individual Defendants' Counterclaim I is three years under N.C.G.S. § 1-52(1) not two years pursuant to N.C.G.S. § 95-25.22(f) and § 1-53 since Plaintiff Scott E. Dimmick is not an "employer" for purposes of a claim for unpaid wages under North Carolina's Wage and Hour Act.

The three-year statute of limitations under N.C.G.S. § 1-52(1) did not expire prior to Individual Defendants' filing their Answer and Counterclaims on December 2, 2021. The limitations period did not begin to run, as to each annual payment individually, until Plaintiff Scott E. Dimmick failed to make such payment during a given calendar year (e.g., limitations period for the 2018 payment did not begin to run until January 1, 2019—when the payment was not made in 2018 as required).

Finally, the integration clause of the agreement between the parties dated January 1, 2018 (the "Agreement") does not bar Individual Defendants' Counterclaim I since Individual Defendants' Counterclaim I is not an agreement between and among the Sellers (as defined by the Agreement) and the Buyer (as defined in the Agreement).

## II. ARGUMENT

### A. Standard of Review.

The standard for review for a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is the same as the standard used for a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Drager v. Pliva USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). Judgment on the pleadings is not favored, and the non-moving party's pleadings are to be liberally construed. *Huss v. Huss*, 230 S.E.2d 159, 162 (N.C. App. 1976). Therefore, judgment on the pleadings "should only be granted if, after accepting all well-

pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferenced from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Drager*, 741 F.3d at 474 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).

**B. Individual Defendants' Counterclaim I is Not Barred by the Applicable Statute of Limitations Pursuant to N.C.G.S. § 1-52(1).**

Generally, under North Carolina law, the statute of limitations for a breach of contract action is three years. See N.C.G.S. § 1-52(1). However, if the claim falls under the Wage and Hour Act, the applicable statute of limitations is only two years. See N.C.G.S. § 95-25.22(f); see also N.C.G.S. § 1-53.

**1. Plaintiff Scott E. Dimmick is not an "employer" within the meaning of the Wage and Hour Act, and, therefore, Individual Defendants' Counterclaim I is not subject to the two-year statute of limitations.**

The two-year statute of limitations set forth in N.C.G.S. § 95-25.22(f) applies to "any employer who violates" enumerated provisions of the Wage and Hour Act. N.C.G.S. § 95-25.22(a). "Employer" is defined, for purposes of the Wage and Hour Act, as "any person acting directly or indirectly in the interest of an employer in relation to an employee." N.C.G.S. § 95-25.2(5).

However, courts in North Carolina do not simply defer to the self-characterization of parties to determine whether someone is an "employee" or an "employer" under the Wage and Hour Act but, instead, consider several factors. See

*Powell v. P2Enterprises, LLC*, 786 S.E.2d 798, 801-802 (N.C. App. 2016); *disc. rev. denied* 794 S.E.2d 326 (N.C. 2016). Courts will consider the totality of the "economic reality" test to determine whether an individual is an "employer" for purposes of the Wage and Hour Act. *Id.* These factors include: (1) power to hire and fire employees, (2) supervision and control of employee work schedules or working conditions, (3) determination of the rate and method of payment, and (4) maintenance of employment records. *Id.* at 801.

In *Powell*, plaintiff and his father purchased a restaurant together where plaintiff served as the general manager in charge of hiring, training, payroll, scheduling, ordering, etc. while his father was "rarely involved in the restaurant's day-to-day operations." *Id.* at 799. Within two years, the relationship between plaintiff and father began to deteriorate, and the restaurant was struggling to the point where the restaurant could not pay plaintiff's wages in order to meet other obligations. *Id.* at 799-800. Thereafter, plaintiff initiated his complaint against his father and plaintiff and father's holding company, P2Enterprises, for the unpaid wages. *Id.* at 800.

In applying the economic reality test, the North Carolina Court of Appeals held that neither P2Enterprises nor plaintiff's father could be considered an "employer" and plaintiff could not maintain an action for unpaid wages pursuant to the Wage and Hour Act. *Id*. at 802-803. In so holding, the Court explained:

- The father, while nominally involved in the hiring of restaurant employees, could not be said to retain the power to hire and fire, particularly the power to fire plaintiff. *Id.* at 802.
- Plaintiff, and not father, was responsible for the day-to-day operations of the restaurant, and the father was "off site more often than not." *Id*.
- Plaintiff, and not father, was responsible for setting pay rates and method of payment for employees, and father did not meaningfully or actively participate in the payroll process. *Id.*
- Plaintiff, and not father, was responsible for maintaining the employment records for the restaurant. *Id.*

"Although [father] maintained financial control over the restaurant by virtue of his position as the sole Member of P2E, he did not have significant day-to-day operational control over the restaurant's employees," and, therefore, the court held that neither father nor P2Enterprises was an "employer" for purposes of a claim under the Wage and Hour Act.

Determining whether Plaintiff Scott E. Dimmick was Defendant Emerson L. Dimmick's "employer" is a fact intensive inquiry that is not simply resolved by the fact that payment is referred to as "compensation" or that Defendant Emerson L. Dimmick is referred to as an "employee." See ECF No. 48, pp. 9-10, ¶¶ 12-14. Instead, such a determination requires analysis of the type and level of control or

involvement Plaintiff Scott E. Dimmick had in the day-to-day operations of Stanly Insurance Services ("SIS") and, therefore, judgment on the pleadings is not appropriate.

Furthermore, Individual Defendants anticipate and expect that such a factual inquiry will uncover that Plaintiff Scott E. Dimmick's involvement in SIS was akin to the father's involvement in *Powell*: Plaintiff Scott E. Dimmick may have shared formal authority with Defendant Emerson L. Dimmick to hire and fire, but he did not exercise such authority; Defendant Emerson L. Dimmick controlled all aspects of SIS' daily operations and Plaintiff Scott E. Dimmick was rarely present in North Carolina, let alone the SIS offices; Plaintiff Scott E. Dimmick was not active in the payroll process for SIS; and Plaintiff Scott E. Dimmick was not responsible for maintaining personnel or employment records. As such, a factual inquiry is likely to determine Plaintiff Scott E. Dimmick is not an "employer" and Individual Defendants' Counterclaim I is not a claim for a violation of the Wage and Hour Act by an "employer." Therefore, the two-year statute of limitations does not apply, and judgment on the pleadings based upon the same should be denied.

**2. The statute of limitations did not begin to run until each payment came due and went unpaid and Individual Defendants were at liberty to sue.**

In a contract for payment in installments, a Plaintiff does not suffer harm such that they could maintain a cause of action for breach of contract until there is failure

to pay when payment is due and owing. *Hamilton v. Memorex Telex Corp.* 454 S.E.2d 278, 282 (N.C. App. 1995); *disc. rev. denied*, 456 S.E.2d 830 (N.C. 1995). Each missed payment under a contract for payments in installments is a separate breach of contract and the statute of limitations runs independently for each such breach. *Marzec v. Nye*, 690 S.E.2d 537, 542 (N.C. App 2010); *U.S. Leasing Corp. v. Everett, Creech, Hancock, and Herzig*, 363 S.E.2d 665, 669 (N.C. App. 1988). The statute of limitations cannot begin to run until the promise is broken and an injured party is at liberty to sue to enforce the promise. *Hamilton*, 454 S.E.2d at 282.

Here, the allegations supporting Individual Defendants claims under the Compensation Agreement include a promise, in 2016, by Plaintiff Scott E. Dimmick to pay Defendant Emerson L. Dimmick $600,000.00 for his work with SIS. ECF No. 48, p. 9, ¶ 13. Plaintiff Scott E. Dimmick then made timely payments of $100,000.00 for each of 2016 and 2017 indicating the intention of the parties that payments were to be made in installments of $100,000.00 for each year from 2016 through 2021. *Id.* at 10, ¶ 15. Thereafter, Plaintiff Scott E. Dimmick failed to make payments for 2018, 2019, 2020 and 2021. *Id.*

Nothing in the pleadings of the present action, nor the agreements of the parties, set forth a date certain for such $100,000.00 payments to be made to Defendant Emerson L. Dimmick except that payment was to be made at some point in the calendar years of 2018-2021. See *Id.* at pp 9-10, ¶¶ 13, 15. A reasonable

inference based upon the previous conduct of Plaintiff Scott E. Dimmick and conclusion drawn therefrom is that Plaintiff Scott E. Dimmick was entitled to make the payment at any point in a given calendar year up to 11:59 p.m. on December 31 of the given year. Therefore, the applicable statute of limitations for the 2018 payment did not begin to run until January 1, 2019—when Defendant Emerson L. Dimmick was now at liberty to sue for the missed payment—and the three-year statute of limitations did not expire until ***after*** Individual Defendants filed their Answer and Counterclaims on December 2, 2021. ECF No. 30. The same is true for each successive payment Plaintiff Scott E. Dimmick failed to make.

Because Defendant Emerson L. Dimmick was not at liberty to sue for a missed payment until the payment was, in fact, not paid and Plaintiff Scott E. Dimmick was in breach of the Compensation Agreement, it is irrelevant for purposes of the statute of limitations that the initial promise was made in 2016. It is also irrelevant that the promise predates the Agreement since the Compensation Agreement is not affected by or associated with the Agreement. See Sec. II. C. *infra*. Until Defendants were harmed, they could not maintain a cause of action, and the statute of limitations did not begin to run. Therefore, Individual Defendants' Counterclaim I is timely and judgment on the pleadings should be denied.

### C. The "Entire Agreement" Clause of the Agreement Does Not Affect the Compensation Agreement or any Agreement between Plaintiff Scott E. Dimmick and Defendant Emerson L. Dimmick.

Plaintiffs contend that the Agreement's integration clause bars Individual Defendants' Counterclaim I. See ECF No. 50-1 p. 13. However, in quoting the language of the integration clause, Plaintiffs fail to include a necessary sentence to understand how the integration clause applies and what, if any, agreements would be merged into the Agreement. Plaintiffs' recitation of the integration clause starts with the second sentence and fails to include the first sentence of the provision which states, "[t]his is the sole agreement ***among Sellers and Buyer*** with respect to the transactions completed hereby." ECF No. 45-1 p. 7 (emphasis added).

The plain language of the integration clause states that it only applies to agreements between the "Sellers" and the "Buyer." To fully understand the scope of the integration clause, this Court must consider who are "Sellers" and who is the "Buyer." The Agreement itself defines these terms: "Buyer" is Partners Insurance Agency ("PIA") only, and "Sellers" is defined to include Scott E. Dimmick, Jodie C. Dimmick, Emerson L. Dimmick, Karen A. Dimmick and SIS. See ECF No. 45-1 p. 2.

Both Plaintiff Scott E. Dimmick and Defendant Emerson L. Dimmick are defined as being included in "Sellers." Under no interpretation of the agreement is Defendant Emerson L. Dimmick defined or construed to be the "Buyer." The "Buyer" is only PIA and no other party. *Id*.

Therefore, turning back to the language of the integration clause, it only applies to merge and integrate any and all agreements between "Sellers" (as defined by the Agreement) and "Buyer" (as defined by the Agreement). Therefore, it has no effect to integrate or otherwise override any agreements between and amongst the Sellers, which is what the Compensation Agreement is.[1]

Since the integration clause, by its own terms, only applies to merge agreements between "Sellers" and "Buyer" and does not affect agreements amongst the Sellers, the integration clause does not have any effect in barring Individual Defendants Counterclaim I, and judgment on the pleadings should be denied.

### D. Plaintiff's Argument that the Profit Agreement is Defeated Since the Agreement Did Not Include Offsets for Such Amounts Is Misplaced Since a Plain Reading of the Agreement Implies Such Offsets Were Contemplated.

Plaintiffs argue that if Defendant Emerson L. Dimmick was entitled to an adjustment based upon the Profit Agreement that such an adjustment would appear in the Agreement. ECF No. 50 ¶ 52. Notwithstanding the arguments set forth above, if Plaintiffs' position is that the Agreement was a purchase by all Defendants of Plaintiffs' interest in SIS (which is contrary to the language of the Agreement), then such an offset does appear within the Agreement. By defining "Sellers" to include,

[1] Interestingly, Plaintiffs went to lengths to clearly state to the Court that Plaintiffs are only seeking reformation of the Agreement as it relates to the "proper identification of the payees" (i.e., the "Sellers") ECF No. 50-1 p. 12 fn. 2. Plaintiffs make no contention that the Agreement's definition of "Buyer" was in any way incorrect in limiting its definition to only PIA, nor do they request the Court to reform the Agreement in that regard.

among others, Individual Defendants, the Agreement apportions half the purchase price of $1,105,372 to Individual Defendants. See ECF No. 45-1, p. 3.

So, taking Plaintiffs' argument at face value that the Agreement was an Agreement between all Defendants and Plaintiffs, the purchase price (which Plaintiffs claim to be uniquely entitled to) is offset by Individual Defendants' entitlement to one-half the purchase price by their intentional inclusion as "Sellers" under the Agreement.

## III. CONCLUSION

In light of the foregoing, and particularly since it is clear from the pleadings and the argument above that Individual Defendants have plead a version of facts—and such facts do exists—which entitle Individual Defendants to the relief sought. Therefore, Individual Defendants respectfully request the Court deny Plaintiffs' Motion for Judgment on the Pleadings.

This the 9th day of March, 2023.

_/s/ Ryan B. Tiede_______________

Ryan B. Tiede
State Bar No. 43258
Thurman, Wilson, Boutwell & Galvin, P.A.
301 South McDowell Street, Suite 608
Charlotte, North Carolina 28240
P: (704) 377-4164
F: (704) 377-5503
james@twbglaw.com
ryan@twbglaw.com
*Attorney for the Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of March, 2023, I electronically filed the foregoing Brief in Opposition to the Motion of Plaintiffs/Counterclaim Defendants Scott E. Dimmick and Jodie C. Dimmick for Judgment on the Pleadings as to All Counterclaims Pursuant to Federal Rule of Civil Procedure 12(c) with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: counsel for Plaintiffs.

Respectfully Submitted,

_/s/ Ryan B. Tiede________________
Ryan B. Tiede
*Attorney for the Defendants*

**CERTIFICATION OF COUNSEL**

I hereby certify pursuant to Rule 11 of the Federal Rules of Civil Procedure that this opposition brief contains 2,482 words as counted by Microsoft Word and that it is within the word limits set by Standing Order Governing Civil Case Management Before the Honorable Frank D. Whitney issued on 14 May 2007.

_/s/ Ryan B. Tiede________________
Ryan B. Tiede
*Attorney for the Defendants*