IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Scott E. Dimmick and :
Jodie C. Dimmick, :
 :
      Plaintiffs, :
 :
  vs. : No. 3:21-cv-00459-FDW-DCK
 :
Partners Insurance Agency, Inc., :
Emerson L. Dimmick, and :
Karen A. Dimmick, :
 :
      Defendants. :

**Reply Brief sur the Motion of Plaintiffs/Counterclaim Defendants Scott E. Dimmick and Jodie C. Dimmick for Judgment on the Pleadings as to All Counterclaims Pursuant to Federal Rule of Civil Procedure 12(c)**

Scott E. Dimmick ("Scott") files this brief in reply to the brief of Emerson L. Dimmick ("Emerson") on the pending motion for judgment on the pleadings.

### I.    Bottom Line Up Front

Emerson's claim that payments under the alleged oral Compensation Agreement were to be made over time is nowhere borne out in the pleading upon which he advances such theory, and such assertion contradicts his pleading's own clear statement that "[t]he time

had come for Plaintiff Scott to perform under the Compensation Agreement and there were no conditions precedent to his performance and/or any such conditions had been met."

Emerson's claims under the alleged oral Compensation Agreement and Profit Agreement are defeated as a matter of substantive law by the Parol Evidence Rule. Emerson merely alleges that such agreements were not included in the parties' written Agreement, but he nowhere pleads (or even argues in briefing) an exception to the Parol Evidence Rule, such as fraud or mistake, to allow such claims to advance in the face of the integration clause in the parties' written Agreement.

## II. Argument

### A. Statute of Limitations Defense

Defendants' Answer to Amended Complaint and Counterclaims, ECF Doc. #48 ("Ans. to Am. Compl. and Counterclaims"), makes no allegation as to any time for Scott's performance under the alleged oral Compensation Agreement with but one exception: Emerson pleads that "[t]he time had come for Plaintiff Scott to perform under the Compensation Agreement and there were no conditions precedent to his performance and/or any such conditions had been met." ECF Doc. #48,

2

p. 11, ¶ 23. That certainly *sounds* like an allegation that Scott had not performed when he was supposed to perform as of the time that the parties entered into their written Agreement on January 1, 2018. At a minimum, such pleading flies in the face of Emerson's johnny-come-lately contrary argument that "[n]othing in the pleadings of the present action, nor the agreements of parties, set forth a date certain for such $100,000.00 payments to be made to Defendant Emerson L. Dimmick except that payment was to be made at some point in the calendar years of 2018-2021." Doc. 51, p. 7. This argument *ex dubio* is not supported by the allegations of Emerson's own pleading.

Emerson's pleading at paragraphs 13 and 15 does *not* state that additional payments were to be made on a yearly basis such as might arguably extend the time period in which discrete, successive failures of payment could be sued upon as separately accruing contractual breaches. Emerson's *original* pleading suggested sequential payments of $100,000 *per annum,* but his current—and operative—pleading does not. Emerson's counterclaims as originally stated and as amended are compared as follows,

3

| Original Counterclaim (Doc. 30) | Amended Counterclaim (Doc. 48) |
|---|---|
| 13. In 2016, Plaintiff Scott E. Dimmick agreed to pay Defendant Emerson L. Dimmick $500,000.00 over five years to compensate him for his continued work for SIS ("Compensation Agreement"). . . . | 13. In 2016, Plaintiff Scott agreed to pay Defendant Emerson $600,000.00 to compensate him for his continued work for SIS ("Compensation Agreement"). . . . |
| 15. Plaintiff Scott E. Dimmick did make the agreed upon payments to Defendant Emerson L. Dimmick in 2016 and 2017 for $100,000 each, but failed to make timely payments in 2018, 2019, and 2020. | 15. Plaintiff Scott did make the agreed upon payments to Defendant Emerson in 2016 and 2017 for $100,000.00 each but failed to or refused to make timely thereafter. |

Emerson originally pleaded the existence of an agreement to pay "$500,000.00 over five years[,]" adding that Plaintiff Scott Dimmick "failed to make timely payment [on] in 2018, 2019, 2020." See extract from ECF Doc. #30, *supra*. Emerson now pleads an agreement to pay one hundred thousand dollars more and omits the terms "over five years" and any specific allegation of failure to make "timely payments in 2018, 2019, 2020." See extract from ECF Doc. #48, *supra*.

4

When a party pleads a particular theory of time of performance in an original pleading and then abandons the same in a subsequent pleading, the original theory is superseded. Emerson has changed the contents of his pleading but wants the Court still to credit his original pleading as operative, though now superseded.[1]

As to the Compensation Agreement Emerson clearly pleads that "[t]he time had come for Plaintiff Scott to perform under the Compensation Agreement and there were no conditions precedent to his performance and/or any such conditions had been met." ECF Doc. #48, p. 11, ¶ 23. The Profit Agreement is not saved either. Claims on both alleged oral agreements are properly dismissed as untimely.

### B. Parol Evidence Rule and Integration Clause

The North Carolina Supreme Court has notably described application of the Parol Evidence rule as follows,

> [W]here the parties have deliberately put their engagements in writing in such terms as import a legal obligation free of uncertainty, it is presumed the writing was intended by the parties to represent all their engagements as to the elements

---

[1] Despite the Federal Rules' relatively liberal allowance of amendments to pleadings, Emerson has not sought leave to so amend in response to Scott pointing out the statute of limitations problem appearing plainly on the surface of Emerson's deficient allegations. *See* Fed. R.Civ.P. 15.

5

> dealt with in the writing. Accordingly, all prior and contemporaneous negotiation in respect to those elements are deemed merged in the written agreement.
>
> And the rule is that, in the absence of fraud or mistake or allegation thereof, parol testimony of prior or contemporaneous negotiations or conversations inconsistent with the writing, or which tend to substitute a new and different contract from the one evidenced by the writing, is incompetent.

*Neal v. Marrone*, 79 S.E.2d 239, 242 (N.C. 1953) (numerous citations omitted).

A party in *Neal* alleged that the entire agreement between the parties was "partly written and partly oral." *Id.* Such is Emerson's argument here: notwithstanding the parties' written Agreement and its integration clause, Emerson nevertheless claims two other oral agreements between the parties providing for payments between them concerning the business.

The North Carolina Supreme Court in *Neal,* relying upon parol elements allegedly made and agreed upon prior to, and contemporaneously with, the execution of a written contract, first noted that the party alleging the existence of oral terms to supplement the parties' written agreement did not allege fraud or mistake, nor seek reformation or rescission. *Id.* The Court then went on to deem the

6

"parol elements" alleged by the party as "totally inconsistent with and contradictory of the provisions of the written contract which fix[ed] the plaintiffs' compensation and determine[d] the purchase price of the lands." *Id.*

Emerson has not asked the Court to reform the Agreement to add allegedly missing parol terms, while having however expressly disclaimed the existence of such terms. ECF Doc. #45-1, p. 7, ¶ 8(e).

*Neal* dictates the proper disposition of Emerson's unattested claims.

> In these crucial particulars the alleged parol elements declared on by the defendant tend to establish *an entirely different contract from the one evidenced by the writing*. In the absence of allegations of fraud or mistake, any evidence proffered by the defendant in support of such matters would be incompetent.

*Neal v. Marrone*, 79 S.E.2d 239, 242 (N.C. 1953) (citations omitted) (italics added).

Here, Emerson argues "an entirely different contract from the one evidenced by the writing" as the moving party in *Neal* also attempted. This is contrary to the teaching of *Neal,* however, that "where the parties have deliberately put their engagements in writing in such terms as import a legal obligation free of uncertainty, it is presumed the

7

writing was intended by the parties to represent all their engagements as to the elements dealt with in the writing." *Id.* at 242.

Emerson's pleading does not even so much as use the words "fraud" or "mistake" in his pleading. Emerson merely avers that they were omitted. ECF Doc. #48, p. 10, ¶ 16. Such is simply not enough to overcome the Parol Evidence Rule.

<table>
<tr><td></td><td>Respectfully submitted,

**METTE, EVANS & WOODSIDE**

/s/ Aaron D. Martin</td></tr>
<tr><td>By:</td><td>_____

Aaron D. Martin (*pro hac vice*)
Pa. Atty. I.D. No. 76441
3401 North Front Street
Harrisburg, PA 17110
(717) 232-5000
admartin@mette.com

**STAM LAW FIRM**

/s/ Dan Gibson</td></tr>
<tr><td>By:</td><td>_____

Dan Gibson
N.C. State Bar No. 49222
510 West Williams Street
Apex, NC 27502
(919) 362-8873
dan@stamlawfirm.com

*Attorneys for Plaintiffs/
Counterclaim Defendants,
Scott E. Dimmick and Jodie C.
Dimmick*</td></tr>
</table>

Date: March 16, 2023.

**Counsel's Certification of Word Count as Counted by Microsoft Word: 1,493**